**COMMONWEALTH of Kentucky, Appellant,**

v.

**Jeff C. BOTHMAN, Appellee.**

**No. 96–CA–0194–MR.**

Court of Appeals of Kentucky.

Nov. 22, 1996.

Case Ordered Published by Court of Appeals Jan. 17, 1997.

Discretionary Review Denied by Supreme Court April 16, 1997.

A.B. Chandler, III, Attorney General, Michael L. Harned, Assistant Attorney General, Frankfort, for Appellant.

Raymond S. Bogucki, Maysville, for Appellee.

Before WILHOIT, C.J., and GARDNER and KNOPF, JJ.

GARDNER, Judge.

The Commonwealth of Kentucky appeals from an order of the Mason Circuit Court which suppressed the introduction of evi-

dence seized at a police checkpoint. We reverse and remand.

On July 3, 1994, Kentucky State Police Trooper A.K. Taylor (Taylor) radioed a request to his supervising officer seeking permission to establish an automobile checkpoint at the Maysville–Aberdeen bridge in Mason County, Kentucky. The supervising officer, Sergeant Farley (Farley), verified that the bridge was a pre-approved location for the establishment of such checkpoints, and approved Taylor's request. Taylor proceeded to the bridge and established the checkpoint. Sometime thereafter, an automobile operated by Jeff C. Bothman (Bothman) was stopped at the checkpoint, and a vial of cocaine allegedly was found in Bothman's possession. Bothman was arrested.

Bothman subsequently filed a motion with the Mason Circuit Court to suppress the introduction of the cocaine into evidence. He argued that the establishment of the checkpoint did not conform with Kentucky State Police General Order OM–E–4 (hereinafter referred to as OM–E–4), and that accordingly the seizure of the evidence arising therefrom was improper and the evidence should be suppressed. The lower court was persuaded by this argument, and it granted Bothman's motion to suppress. This appeal followed.

The Commonwealth now argues that the lower court erred in granting Bothman's motion to suppress. Specifically, it argues that the checkpoint was established in conformity with OM–E–4, and alternatively that the question for the lower court was not whether OM–E–4 was complied with but whether the establishment and operation of the checkpoint passed constitutional muster. Having closely studied the facts and the law, and having heard the arguments of counsel, we find the Commonwealth's argument compelling and must reverse and remand.

■ OM–E–4 sets forth guidelines for the establishment and operation of checkpoints. It provides in relevant part that the post commander or his designee shall develop and maintain a list of locations suitable for the operation of checkpoints, and that checkpoints shall be established only at those locations absent extenuating circumstances. It states that checkpoints shall be scheduled by memorandum or noted on the work schedule, and that non-supervisory officers may request to establish checkpoints at approved locations consistent with the guidelines. The lower court found that the establishment of the checkpoint in question failed to comply with what it found to be OM–E–4's requirement that checkpoints be scheduled "in advance" by the appropriate administrative officer. Since the checkpoint was scheduled during Taylor's shift rather than before his shift, the lower court ruled that the checkpoint was improperly established and that the evidence obtained should be suppressed. In support of this ruling, it concluded that, "[A]t the very least, such checkpoints should be 'scheduled' by the appropriate officer prior to any given shift."

We believe the matter must be reversed for either of two reasons. First, though the lower court concluded that a checkpoint must be scheduled before an officer's shift begins rather than during the officer's shift, we find that OM–E–4 contains no such requirement. It merely provides that, "[T]raffic checkpoints shall be scheduled by the Post Commander, or his designee(s), who shall determine the locations and approximate times of the checkpoints." It goes on to state that, "[T]raffic checkpoints shall be scheduled by memorandum or noted on the work schedule." Though one may reasonably infer from these provisions that an officer may not spontaneously establish a checkpoint without prior approval from a supervisor, we cannot go so far as to conclude from this language that the establishment of a checkpoint is necessarily flawed if it is not noted on the work schedule prior to the beginning of the officer's shift. Furthermore, OM–E–4 expressly states that nonsupervisory officers may request to establish checkpoints, but does not go so far as to provide that such a request must be submitted at a time prior to the commencement of the shift. In the matter at bar, it is uncontested that Taylor submitted such a request while on duty, and upon being approved by Farley the checkpoint was noted on Taylor's work schedule by the dispatcher. We believe that OM–E4 requires nothing more.

Second, even if the checkpoint was established in contradiction to the express language of OM–E–4, which we do not believe to be the case, the dispositive question is whether the establishment of the checkpoint and the subsequent discovery and seizure of the evidence passes constitutional muster. Technical noncompliance with OM–E–4, which does not have the force of law, does not inexorably lead to the conclusion that the establishment of the checkpoint was violative of the constitutions of the United States or of the Commonwealth. In general, a checkpoint must be established in such a manner as to avoid the "unconstrained discretion" inherent in random stops, *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and must be reasonably calculated to protect public safety. *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). Other factors to be considered are whether the checkpoint was conducted pursuant to a systematic plan, *Steinbeck v. Commonwealth*, Ky.App., 862 S.W.2d 912 (1993), and whether only some vehicles were stopped or all vehicles were stopped. *Kinslow v. Commonwealth*, Ky.App., 660 S.W.2d 677 (1983). Moreover, other jurisdictions have similarly held that a police checkpoint will pass constitutional muster without strict compliance with the law enforcement agency's internal guidelines as long as supervisory control is exercised over the establishment and operation of the checkpoint, and as long as the officers do not exercise unfettered discretion in stopping members of the general public. *See State v. Madalena*, 121 N.M. 63, 908 P.2d 756 (App.1995).

The lower court found that but for its conclusion that the checkpoint should have been scheduled prior to Taylor's shift, the checkpoint was otherwise properly established and conducted. It stated that, "[I]n the case before this Court, there is no evidence, and the Court does not find, that the troopers in any way singled out the defendant, Jeff Bothman, to be stopped. There is no evidence that the checkpoint was not conducted, once having been established, in accordance with the adopted guidelines." Thus, the sole basis upon which the lower court found the checkpoint to be improper was a matter of scheduling rather than any constitutional infirmity. Having concluded that OM–E–4 does not expressly require the scheduling of the checkpoint prior to the commencement of the participating officer's shift, and acting in reliance on the lower court's finding that the operation of the checkpoint was not otherwise improper, we must conclude that the lower court erred in finding the establishment of the checkpoint and the subsequent seizure of evidence to be improper.

For the foregoing reasons, the order of the Mason Circuit Court is reversed and remanded for proceedings consistent with this opinion.

All concur.