**COMMONWEALTH of Kentucky,
Appellant,**

**v.**

**Charles O. SHARPE, Appellee.**

**No. 1999–CA–001572–DG.**

Court of Appeals of Kentucky.

Feb. 16, 2001.

Rehearing Denied April 20, 2001.

Discretionary Review Denied
by Supreme Court Nov. 14, 2001.

---

Neil Ward, Asst., County Atty., Pineville, Brief for Appellant.

Jeffery W. Helton, Helton and Helton, Pineville, Brief for Appellee.

Before: EMBERTON, McANULTY, and SCHRODER, Judges.

### OPINION

McANULTY, Judge.

Charles O. Sharpe (hereinafter appellee) was convicted in the Bell District Court following a bench trial for Driving under the Influence. On appeal, the Bell Circuit Court reversed the conviction on the ground that appellee was arrested pursuant to an illegal roadblock. We granted discretionary review. We reverse the decision of the circuit court and reinstate the judgment of the district court.

Appellee filed a motion to dismiss in district court based on an illegal road stop or illegal traffic check. Appellee claimed in his motion to dismiss that the roadblock was at a location not approved by the Kentucky State Police, that the roadblock was conducted in violation of the Kentucky State Police General Order, and that it violated constitutional requirements that it be conducted with due regard to public safety. The court held a hearing on the motion.

The roadblock in question was established by Trooper Phillip Burnett of the Kentucky State Police on June 12, 1998.

Trooper Burnett testified at the hearing that the location he selected for the traffic check had been preapproved by the state police. He stated that he contacted a supervisor, Sergeant H.L. Howard, at the state police post in Harlan and received approval. The preapproved location was on U.S. 25E, just north of a tunnel. He testified that he had used that location as a roadblock before, using the same procedure to set it up and obtain approval. The roadblock was conducted by Trooper Burnett and an officer he was training. Trooper Burnett stated that they were not accompanied by a supervisor. Trooper Burnett testified that every vehicle coming through the roadblock was checked.

Sergeant Howard testified that he had supervisory authority over road checks. He related that the procedure for road checks was for an officer to contact the supervisor at the post by phone, radio, or in person; request a traffic check at a preapproved location; and obtain the approval from the supervisor. He testified that the tunnel location was on the list of preapproved locations for traffic stops. He did not have a copy of that list at the hearing. Sergeant Howard was not certain if he was the supervisor working that night who approved the traffic stop. The Commonwealth produced a dispatcher's log which reflected that Trooper Burnett called in to the Post to obtain approval, and the log showed Sergeant Howard's badge number.

At the hearing, appellee adduced evidence from Cumberland Gap Tunnel Authority employees that the roadblocks established just north of the tunnel created a potential safety hazard because of tractor trailers traveling through the tunnel at high speeds before the road block becomes visible. The witnesses testified to their observations of roadblocks at that site gen-

erally, but not to how the roadblock was conducted on June 12, 1998.

At the close of the hearing, the trial court denied the motion. The court found that while there may have been safety concerns at that site, there was no evidence that the road check was being conducted in an unsafe fashion on the night in question. The trial court found that the Commonwealth established that the road check met the required constitutional standards: 1) that the officer in the field is not given unbridled discretion and 2) that the road checks be conducted pursuant to "a systematic plan of sorts."

Following his conviction, appellee appealed the trial court's ruling on the motion to dismiss to the Bell Circuit Court. The circuit court stated that road checks should be set up according to a systematic plan which should be substantially complied with. The circuit court found that:

> The evidence in this case does not establish compliance with the Department's plans for conducting road checks. The evidence does not establish, or attempt to establish the location of the road check with reference to the entrance of the Tunnel. It does not establish the name of the Supervisor or person giving approval to this road check. It does not establish that the point at which the check was made was in an area assuring reasonable safety to the general public.

The circuit court found that there were serious concerns about the safety of road checks in the location used. The court stated, "[s]ince road blocks constitute a situation that creates danger to innocent operators such must be conducted in strict conformity with the regulations adopted to insure such safety." The court concluded that the Commonwealth failed to prove that the road block was legally established, and reversed appellee's conviction.

■ On appeal, the Commonwealth urges that its witnesses at trial did prove that the road check was legally established since it met the standards set forth in *Commonwealth v. Bothman,* Ky.App., 941 S.W.2d 479 (1996). The Commonwealth further maintains that the circuit court's public safety concerns did not give it authority to declare the road check unconstitutional.

■ *Bothman* involved a similar circumstance in which a defendant arrested at a road block alleged that it was not established in accordance with internal state police procedure. The Kentucky State Police General Order OM–E–4, revised October 21, 1992, establishes the procedure for traffic checkpoints. In *Bothman,* the court found that the evidence did not substantiate that the police failed to follow the OM–E–4. The court continued,

> [E]ven if the checkpoint was established in contradiction to the express language of OM–E–4, which we do not believe to be the case, *the dispositive question is* whether the establishment of the checkpoint and the subsequent discovery and seizure of the evidence passes constitutional muster. Technical noncompliance with OM–E–4, which does not have the force of law, does not inexorably lead to the conclusion that the establishment of the checkpoint was violative of the constitutions of the United States or of the Commonwealth. (Emphasis added.)

*Id.* at 481. *Bothman* instructs that the dispositive query is whether the road block was constructed so as to pass constitutional muster.

■ The road block must be constructed so as to avoid the unconstrained discretion of random stops. *Id.* at 481. Trooper Burnett testified that they stopped and checked every vehicle. In fact, as noted by the circuit court, appellee did not argue that the road check was

discretionary or a random check. Next, the road check must be reasonably calculated to protect public safety. *Id.* This does not mean that the road check must be at the safest place possible or eliminate all risks. That requirement in *Bothman* was derived from the United States Supreme Court opinion in *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The Supreme Court was not discussing highway safety measures such as the advance visibility of the roadblock. The Court stated that the constitutional inquiry under the fourth amendment weighed the degree to which the seizure advances the public interest. *Id.* at 453, 110 S.Ct. at 2487, 110 L.Ed.2d at 422.

The OM–E–4 stated that the determination of a checkpoint location "shall bear a reasonable and articulable relationship to a public safety or traffic violation problem." The road check location in this case was near the border of Bell County, a dry county, and was ostensibly designated to check drivers returning at night from drinking establishments in the neighboring wet county. The trial judge remarked that,

> if there is one location anywhere, probably anywhere in the State of Kentucky that is set up—for a road—for conducting a road check it is that hole in the mountain. It just is, that is where the alcohol is, on one side of the hole, and on the other side of the hole is where the people live, you know, and there couldn't be a better place for a road check. And

the police know that, and they conduct them weekly practically.

We find that the road block in this case was designed and established for the proper public safety concern of detecting motorists driving under the influence.

Certainly, road blocks should be established with an eye to maintaining an adequate level of personal safety while they are conducted on the roads and highways of the Commonwealth. However, we believe that these are the considerations taken by the Kentucky State Police when designating the preapproved locations. The OM–E–4 states that checkpoint locations shall be selected based on consideration of safety and visibility to the public. As found by the trial court, there was no proof that the particular roadblock in question was conducted in an unsafe manner. There was no proof that the road check was unconstitutional because it was discretionary, or was for an improper purpose not related to the public safety. Thus, appellee made no showing that his arrest was improper. We therefore reverse the Bell Circuit Court, and reinstate the judgment of the Bell District Court.

ALL CONCUR.