Chris MONIN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–CA–000011–DG.

Court of Appeals of Kentucky.

June 30, 2006.

Discretionary Review Denied by Supreme Court Jan. 18, 2007.

Elmer J. George, Lebanon, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Frankfort, KY, Joseph H. Mattingly III, Marion County Attorney, Special Assistant Attorney General, Lebanon, KY, for appellee.

Before COMBS, Chief Judge; KNOPF, Judge; BUCKINGHAM, Senior Judge.[1]

## OPINION

COMBS, Chief Judge.

Following a jury trial in the Marion District Court, Chris Monin was convicted of driving under the influence and of failing to wear a seatbelt. On appeal to the Marion Circuit Court, Monin contended that he had been arrested at an illegally established and improperly maintained vehicle checkpoint. The circuit court disagreed and affirmed his conviction. We granted discretionary review and, after careful review of the case, we reverse his conviction.

After midnight on the evening of September 5, 2003, Monin was stopped by the Kentucky State Police (KSP) at the intersection of Kentucky Highway 49 and Kentucky Highway 327 in rural Marion County. He was arrested for driving under the influence and was transported to the county jail.

On November 19, 2003, Monin filed a motion to dismiss in district court. He argued that the evidence seized during the stop should be suppressed since it was obtained at a detention resulting from an unconstitutional checkpoint. On December 8, 2003, the trial court conducted a hearing on the motion.

Kentucky State Trooper Frederick R. Cornett testified at the hearing that the site of the vehicle checkpoint in question had been pre-approved by the Kentucky State Police (KSP). Although Trooper Cornett could not remember the officer who helped him to conduct the checkpoint, he indicated that if a supervisor was not present at the scene, regulations required him to call the KSP post in Columbia for approval before establishing the checkpoint. Trooper Cornett explained that a log kept at the post would indicate which supervisor authorized the September 6 checkpoint.

Trooper Cornett did not have a copy of any paperwork indicating that the checkpoint had been properly authorized. The Commonwealth then offered to produce

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

the log following the hearing. Trooper Cornett could not recall the time at which the checkpoint had been established. He did remember that it was dark and cloudy and that all of the cruiser's lights had been illuminated at the checkpoint. Trooper Cornett did not indicate which of the officers had been officially designated as the officer in charge of the checkpoint; he could not state the primary purpose of the checkpoint.

When questioned by Monin's attorney, Trooper Cornett admitted that he did not know whether any media announcements had been made concerning the checkpoint; nor could he remember whose idea it was to establish the checkpoint at that particular time and at that location. Trooper Cornett explained that the checkpoint was immediately disbanded when Monin was arrested and had to be transported.

Following the hearing, the Commonwealth produced and filed in the record a faxed copy of Trooper Cornett's time card from the state police post in Columbia. Handwritten on the copy was the following notation:

302 [2]

I didn't find any

road check for 090503

on the log

In an affidavit filed with the trial court, Monin stated that he had driven behind Trooper Cornett's cruiser on Kentucky Highway 327 from a bar to the location where he was eventually stopped. Monin recounted that Trooper Cornett had illuminated only the headlights of his cruiser and that there was no indication that he was approaching a vehicle checkpoint. Monin stated that Trooper Cornett motioned him over after he had parked his cruiser at the intersection of Kentucky Highway 49. After reviewing these addi-

tional materials, the district court denied Monin's motion to dismiss.

Following his conviction in district court, Monin appealed the denial of his motion to dismiss to the Marion Circuit Court. Following oral argument, the circuit court observed as follows:

> The testimony at the [suppression] hearing indicates that the troopers conducting the checkpoint intended to stop all vehicles at the checkpoint, that approval for the checkpoint was obtained from a supervisor, and the checkpoint occurred at an approved location.

The circuit court concluded that the Commonwealth had demonstrated that the checkpoint had been properly conducted and that it conformed with constitutional criteria. Therefore, it affirmed his conviction.

■ Monin is before this Court after we granted his motion for discretionary review. He presents a number of arguments on appeal. Since we are persuaded that the checkpoint was not established in conformity with required constitutional standards, we shall limit our discussion to this one allegation of error.

The use of vehicle checkpoints necessarily involves the "constrained discretion of officers at the scene" who must comply with a systematic plan designed to maximize public safety. *Commonwealth v. Buchanon*, 122 S.W.3d 565, 569 (Ky.2003). KSP have established a Traffic Safety Checkpoint Policy, referred to as OM–E–4, which provides general guidelines to follow when conducting checkpoints. *Commonwealth v. Bothman*, 941 S.W.2d 479 (Ky. App.1996). While we must follow the principles established by the United States Supreme Court relative to the constitutionality of vehicle checkpoints, we must also

**2.** This is apparently the unit number used to identify Trooper Cornett.

consider the content of the OM–E–4 guidelines designed to insure the lawfulness of roadblocks as a matter of KSP policy.

■ Our review of the testimony presented at the suppression hearing indicates that this vehicle checkpoint was not conducted according to the standards established by OM–E–4. There was no indication that specific media announcements were made regarding the presence and the nature of the checkpoint. There was no indication that one of the troopers was duly designated as the officer in charge of the operation. Nevertheless, failure to comply perfectly with KSP guidelines is not necessarily fatal:

> [t]echnical noncompliance with OM–E–4, which does not have the force of law, does not inexorably lead to the conclusion that the establishment of the checkpoint was violative of the constitutions of the United States or of the Commonwealth.

*Bothman,* 941 S.W.2d at 481. Rather, the guidelines "are to be applied on a case-by-case basis in order to determine the reasonableness of each roadblock." *Buchanon,* 122 S.W.3d at 571.

At issue in this case is more than mere technical noncompliance with the established guidelines. Trooper Cornett arrested Monin on the basis of a checkpoint stop rather than articulating a basis for a *Terry*[3] stop based on his individualized, reasonable suspicion that Monin was driving under the influence. In such a case, the KSP must be able to state a constitutionally permissible purpose for its decision to conduct a vehicle checkpoint at a particular place and time. Trooper Cornett could not give adequate answers to the Commonwealth's questions (both during the suppression hearing and at trial) regarding prior supervisory approval to conduct the checkpoint at that place and time. There was obviously no concerted planning to maintain the checkpoint since it was immediately abandoned when Monin was arrested. Finally, clear evidence contradicts Trooper Cornett's assertion that a vehicle checkpoint had been properly planned, authorized, and undertaken at this place and time; that evidence is the handwritten notation on his own timecard: "I didn't find any road check for the 090503 on the log."

In light of the conflicting and incomplete evidence in this case, we conclude that this vehicle checkpoint was not properly conducted so as to limit the troopers' discretion at the scene or to maximize public safety in any way. It appears to have been an isolated stop later characterized as a checkpoint detention. The Commonwealth has failed to show how this stop otherwise complied with any exemption to a warrant requirement based on an individualized suspicion of wrongdoing. Absent such an exception, the search and seizure must fail under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution.

Accordingly, we hold that the checkpoint established by Trooper Cornett was improper and, therefore, unconstitutional, rendering inadmissible any evidence seized pursuant to the stop of Monin's vehicle. The evidence should have been suppressed. We reverse the opinion of the Marion Circuit Court (that had affirmed Monin's conviction in the district court).

ALL CONCUR.

---

**3.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).