IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-40688
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN ANTONIO MORENO-VARGAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

December 18, 2002

Before GARWOOD, JOLLY, and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

Juan Antonio Moreno-Vargas appeals his conviction for
possession of cocaine with intent to distribute. Moreno contends
that the district court erred in denying his motion to suppress
evidence seized from his vehicle at the Sarita immigration
checkpoint. Citing *City of Indianapolis v. Edmond*, 531 U.S. 32,
121 S.Ct. 447 (2000), Moreno contends that his detention at the
checkpoint was illegal at its inception because the checkpoint has

a secondary programmatic purpose of drug interdiction, as evidenced by the permanent presence of dogs cross-trained to detect drugs as well as humans (the alert of the dogs being the same on detection of either). This argument is without merit.

Moreno does not dispute that, as the district court found (on the basis of ample, and virtually undisputed, evidence), the Sarita checkpoint has as its *primary* programmatic purpose the enforcement of the immigration laws. *Edmond* requires no more.

*Edmond* states "[o]ur holding also does not impair the ability of police officers to act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful *primary* purpose, even where such action may result in the arrest of a motorist for an offense unrelated to that purpose." *Id*., 121 S.Ct. at 457 (emphasis added).[1] In *United States v. Machuca-Barrera*, 261 F.3d 425 (5th Cir. 2001), we held that "checkpoints with the *primary* purpose of identifying illegal immigrants are constitutional," *id*. at 431 (emphasis added), that in such a case

[1]*See also id*., 121 S.Ct. at 456 n.1:

". . . our judgment turns on the fact that *the primary* purpose of the Indianapolis checkpoints is to advance the general interest in crime control. THE CHIEF JUSTICE's dissent also erroneously characterizes our opinion as holding that the 'use of a drug-sniffing dog . . . annuls what is otherwise plainly constitutional under our Fourth Amendment jurisprudence.' *Post*, at 458. Again, the constitutional defect of the program is that its *primary* purpose is to advance the general interest in crime control." (emphasis added).

2

"[i]t is the length of the detention, not the questions asked, that makes a specific stop unreasonable," *id*. at 432, and that where "the *primary* purpose of the . . . checkpoint is to investigate immigration status . . . we face *only* the question of whether the suspicionless [checkpoint] stop . . . was sufficiently limited in duration to pass constitutional muster." *Id*. at 434-35 (emphasis added). In that case, we upheld the search despite the fact that the Border Patrol Agent at the checkpoint had asked the defendant about drugs, because the questioning was "within the permissible duration of an immigration checkpoint stop." *Id*. at 435. We are aware that in its footnote 2 *Edmond* states "we need not decide whether the State may establish a checkpoint program with the primary purpose of checking licenses or driver sobriety and a secondary purpose of interdicting cocaine." *Id*., 121 S.Ct. at 457 n.2. However, we agree with the D.C. Circuit that this "footnote seems divorced from the rest of the opinion" and that, as indicated in other passages of *Edmond* above cited, a checkpoint is constitutional if its *primary* purpose is lawful. *United States v. Davis*, 270 F.3d 977, 979 (D.C. Cir. 2001). That is likewise the necessary inference of our *Machuca-Berrera* holding discussed above. Further, we cited *Davis* with approval in *United States v. Green*, 293 F.3d 855, 859 (5th Cir. 2002), in respect to determining "the primary purpose of a checkpoint."

The Sarita checkpoint, where Moreno was stopped, is and has

3

been for over twenty-five years an established fixed immigration checkpoint operated by the Border Patrol, the validity of which was sustained in *United States v. Martinez-Fuerte*, 96 S.Ct. 3075, 3079, 3087 (1976), affirming *United States v. Sifuentes*, 512 F.2d 1402 (5th Cir. 1975) (table). We have long sustained such stops at this checkpoint, including those where drugs were discovered (within the scope of the immigration inquiry). *See, e.g., United States v. Rojas*, 538 F.2d 670 (5th Cir. 1976); *United States v. Medina*, 543 F.2d 553 (5th Cir. 1976). Moreno does not argue, and did not argue below, that the Sarita checkpoint would not be maintained were it not for the fact that the immigration stops there often result in interdiction of drugs, nor would the evidence support any such finding, and the district court implicitly found to the contrary.

We accordingly hold that Moreno's immigration stop at the Sarita checkpoint was valid because the checkpoint has as its primary programmatic purpose the enforcement of the immigration laws, regardless of whether or not it could also be said to have a secondary programmatic purpose of drug interdiction.[2]

In the instant case, a dog alerted to Moreno's vehicle at the primary inspection area, while a border patrol agent was questioning Moreno about his citizenship (the dog was then outside of the vehicle and no entry into it had been made). Thus, the

---

[2]The district court made no finding as to whether or not there was any such secondary programmatic purpose.

4

agent had a reasonable suspicion before she had finished verifying Moreno's citizenship and the presence of the dog did not affect the duration of the stop.

The judgment is

AFFIRMED.