Joseph A. SINGLETON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000078–DG.

Supreme Court of Kentucky.

April 26, 2012.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, Michael Louis Harned, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
VENTERS.

Appellant, Joseph A. Singleton, was charged in the Casey Circuit Court with driving under the influence, trafficking in marijuana, eight ounces or less (second or subsequent offense), and possession of drug paraphernalia (second or subsequent offense). All of these charges were based on evidence obtained by police officers of the City of Liberty after they stopped Appellant at a traffic checkpoint and searched his vehicle. Appellant moved to suppress the evidence and the Casey Circuit Court granted his motion. The Commonwealth subsequently brought an interlocutory appeal to the Court of Appeals.[1]

The Court of Appeals reversed the circuit court's order, concluding that the evidence was properly obtained. We granted Appellant's motion for discretionary review to determine whether the police traffic checkpoint that led to the seizure of Appellant and the search of his vehicle were permissible under the Fourth Amendment of the United States Constitution.[2] We

Theodore H. Lavit Cameron Cole Griffith Theodore H. Lavit & Associates, P.S.C. Lebanon, KY, Counsel for Appellant.

1. The procedural route by which the Commonwealth appealed the suppression order is not clear. KRS 22A.020(4) provides for an appeal "by the state in criminal cases from an adverse decision or ruling of the Circuit Court," but along with other conditions, the statute requires "that the record on appeal shall be transmitted by the clerk of the Circuit Court to the Attorney General; and if the Attorney General is satisfied that review by the Court of Appeals is important to the correct and uniform administration of the law, he may deliver the record to the clerk of the Court of Appeals within the time prescribed by the above-mentioned rules." KRS 22A.020(4)(b). We find in the record no indication of review by the Attorney General. However, since no question was raised here or in the Court of Appeals regarding compliance with KRS 22A.020(4), we proceed on the merits.

2. The Fourth Amendment of the U.S. Constitution, as applied to the states under the Fourteenth Amendment, and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures. Neither of the parties, nor the Court of Appeals, made any reference to Section 10 of the Kentucky Constitution so our analysis rests entirely upon the Fourth Amendment.

reverse the Court of Appeals and reinstate the order of the Casey Circuit Court suppressing the evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of the case are not disputed. The Casey Circuit Court found that an ordinance of the City of Liberty, Kentucky, requires that persons who either live or work within the city limits must obtain a "city sticker," and display the sticker upon any motor vehicle they operate in the city. The stickers are obtained from the city upon payment of a ten dollar fee. After receiving complaints that several teachers employed at a local school had failed to obtain a city sticker, the Liberty Police Department set up a traffic checkpoint at an intersection leading to the school to catch offenders. The checkpoint was established using a protocol previously adopted by the police department. Advance notice of the checkpoint was published in the local newspaper.

Each automobile that approached the checkpoint was stopped by a police officer. If a city sticker was observed, the vehicle was waved through the checkpoint. If no sticker was observed on the vehicle, the police detained it long enough to ask the driver if he or she lived or worked within the Liberty city limits. Those found in violation of the ordinance were issued a warning.

Appellant approached the checkpoint in his truck and stopped as commanded. The officers at the checkpoint asked him to roll down his window so they could talk with him. He readily complied. Although the police determined that Appellant was not in violation of the sticker ordinance, while conducting the inquiry, they detected the aroma of marijuana emanating from the vehicle. When questioned about the odor, Appellant admitted that he had

smoked marijuana an hour earlier. He was then removed from his truck for a sobriety check. A warrantless search of the truck followed, resulting in the discovery of a partially smoked marijuana cigarette, a bag of marijuana, hand scales, and some clear plastic bags. Appellant was then arrested and charged with the above described offenses.

Appellant moved to suppress the evidence obtained at the checkpoint, arguing that his detention at a traffic checkpoint set up to enforce the vehicle sticker ordinance was a seizure of his person without probable cause or articulable suspicion in violation of the Fourth Amendment of the United States Constitution. He argued that the unconstitutional seizure of his person and the ensuing search of his truck tainted the evidence and rendered it inadmissible.

The trial court granted Appellant's motion and suppressed the evidence. Relying primarily upon the United States Supreme Court decision in *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) and this Court's opinion in *Commonwealth v. Buchanon*, 122 S.W.3d 565 (Ky.2003), the trial court reasoned that stopping a motorist at a traffic checkpoint without any individualized suspicion of wrongdoing cannot be justified under the Fourth Amendment when the purpose of the checkpoint was unrelated to highway safety or border security.

However, the Court of Appeals reversed the trial court. It concluded that the use of a traffic checkpoint to verify compliance with the City of Liberty's sticker ordinance was similar in purpose to the checkpoints set up to ascertain compliance with driver's licensing and vehicle registration laws previously approved by the United States Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59

L.Ed.2d 660 (1979)[3] and by the Court of Appeals in the unpublished opinion of *Salmon v. Commonwealth.*[4] We granted discretionary review to examine these competing views and determine whether a traffic checkpoint established to detect violations of city ordinances such as the one involved here unreasonably intrudes upon the liberty interests protected by the Fourth Amendment.

## II. ANALYSIS

### A. The Constitutionality of Traffic Checkpoints

■ It is appropriate to begin our analysis with a review of the constitutional underpinnings of a traffic checkpoint (sometimes referred to as a police road-block) in which government authorities briefly detain persons occupying vehicles who have exhibited no suspicious behavior and without an individualized determination of probable cause to believe that illegal conduct is occurring. In pertinent part, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated[.]" "The basic purpose of [the Fourth] Amendment, as recognized in countless decisions of [the United States Supreme Court] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which 'is basic to a free society.'" *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

*1. Even a brief restraint by a police officer is a "seizure" under the Fourth Amendment which must be justified with an objective, articulable suspicion of wrongdoing.*

■ In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court established that even a brief detention of a person for questioning by a police officer, known as a "stop and frisk", constitutes a "seizure" within the meaning of the Fourth Amendment of the United States Constitution, and therefore may properly be undertaken only if the police officer has a reasonable suspicion based upon objective, articulable facts that the subject of the inquiry may be involved in some criminal activity. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16, 88 S.Ct. 1868.

■ Our predecessor court, in *Phillips v. Commonwealth,* 473 S.W.2d 135 (Ky. 1971), concluded that *Terry*'s requirement for objective, articulable suspicion applied to automobile stops: "[T]he search of an individual regardless of whether he is in his home, in an automobile, or walking on the street is governed by the Fourth Amendment." The Unites States Supreme Court reached the same conclusion in *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975):

> We hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the

**3.** While the Supreme Court in *Prouse* held that the state's purpose for establishing the highway checkpoint was constitutionally valid, it sustained the suppression of the evidence obtained during the roadblock because police officers conducting the checkpoint had

unfettered discretion to decide which automobiles would be stopped for a license and registration check. *Prouse,* 440 U.S. at 655, 99 S.Ct. 1391.

**4.** 2007 WL 3227039 (Ky.App.2007).

circumstances that provoke suspicion. As in *Terry*, the stop and inquiry must be "reasonably related in scope to the justification for their initiation."

It is now well established that "stopping an automobile and detaining its occupants is a 'seizure' within the meaning of the Fourth and Fourteenth Amendments, even when the purpose of the stop is limited and the resulting detention quite brief." *Prouse*, 440 U.S. at 653, 99 S.Ct. 1391; *see also Buchanon*, 122 S.W.3d at 568.

**2. Brief traffic stops without individualized suspicion may be constitutional in limited circumstances where the governmental need is sufficiently important.**

A traffic checkpoint inherently generates tension between an individual's legitimate privacy interests under the Fourth Amendment and the state's responsibility for law enforcement and public safety concerns. Thus, while the Fourth Amendment generally bars police officers from effecting a search or seizure without individualized suspicion, nevertheless, some searches and seizures conducted without specific grounds to suspect particular individuals of wrongdoing have been upheld. The United States Supreme Court has recognized exceptions to the general rule in cases where the government has "special needs" that are "important enough to override the individual's acknowledged privacy interest, [and] sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion." *Chandler v. Miller*, 520 U.S. 305, 311–18, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997);

█ Accordingly, in the context of a traffic checkpoint, the United States Supreme Court has recognized certain limited circumstances in which an individual's liberty must yield to the sufficiently compelling concerns of the government such that a stop may be effectuated without individualized suspicion. These circumstances include:

- A brief, suspicionless detention of motorists at a fixed border patrol checkpoint designed to insure border security and intercept illegal aliens. *See United States v. Martinez–Fuerte*, 428 U.S. 543 [96 S.Ct. 3074, 49 L.Ed.2d 1116] (1976).

- A roadblock to check each passing vehicle for the purpose of verifying drivers' licenses and vehicle registrations. *See Prouse*, 440 U.S. 648 [99 S.Ct. 1391].

- A sobriety checkpoint aimed at removing drunk drivers from the road. *See Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 [110 S.Ct. 2481, 110 L.Ed.2d 412] (1990).

- A carefully tailored information-seeking highway checkpoint briefly stopping vehicles to request public assistance in solving a recent, specifically identified crime that occurred on the same highway (as opposed to discovering unknown crimes of a general sort) *See Elinois [Illinois] v. Lidsier [Lidster]*, 540 U.S. 419 [124 S.Ct. 885, 157 L.Ed.2d 843] (2004).

In *City of Indianapolis v. Edmond*, 531 U.S. 32, 37–38, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), the Supreme Court determined that a primary purpose of general crime control, i.e., "interdicting illegal narcotics," was not sufficiently vital to justify a checkpoint program that stopped motorists with no indicia of individualized suspicion. The Court noted that it had "never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing." *Id.* at 41, 121 S.Ct. 447.

We hasten to note here that the United States Supreme Court in *Edmond* explicitly recognized that emergency circum-

stances in grave situations would substantially alter the analysis. "For example ... the Fourth Amendment would almost certainly permit an appropriately tailored roadblock set up to thwart an imminent terrorist attack or to catch a dangerous criminal who is likely to flee by way of a particular route.... While we do not limit the purposes that may justify a checkpoint program to any rigid set of categories, *we decline to approve a program whose primary purpose is ultimately indistinguishable from the general interest in crime control.*" *Edmond,* 531 U.S. at 44, 121 S.Ct. 447 (emphasis added).

**3. Even when established for a valid purpose, a traffic stop conducted without individualized suspicion must be reasonable—the Brown v. Texas balancing test.**

 The Fourth Amendment protects a person from *unreasonable* searches and seizures.

> The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order "to safeguard the privacy and security of individuals against arbitrary invasions...." Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.

*Prouse,* 440 U.S. at 653–654, 99 S.Ct. 1391 (citations and footnotes omitted).

 The reasonableness of intrusions into Fourth Amendment protections, and

hence, the constitutionality of intrusions such as a brief traffic checkpoint seizure, involves a balancing test described in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). This test is stated as a "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* at 51, 99 S.Ct. 2637.

In *Buchanon,*[5] we offered our most comprehensive review of the "limited circumstances" that may justify a traffic checkpoint and we recognized the applicability of the *Brown v. Texas* balancing test. *Buchanon,* 122 S.W.3d at 568. We suggested that to assess the constitutionality of a traffic checkpoint, a court should first determine the primary purpose of the checkpoint. If the court finds that the purpose behind the checkpoint has previously been held to violate the Constitution, then there is no need to perform the balancing test prescribed in *Brown.* Otherwise, the balancing test should be applied to the facts.

We also set forth in *Buchanon* a nonexclusive set of factors to guide the analysis when the reasonableness of a checkpoint must be determined. We need not apply that criteria to the checkpoint in the instant case, nor do we now consider the balancing test of *Brown,* or address the arguments of the parties pertaining thereto, because, for the reasons explained below, we conclude that the roadblock subject to this review lacked a valid, constitutional purpose.

**B. The City of Liberty's Checkpoint to Promote Compliance with the City's Sticker Ordinance**

---

5. In *Buchanon,* we examined the validity of a traffic checkpoint ostensibly established as a sobriety checkpoint, but which in reality was designed to interdict illegal drugs. Because that purpose could not withstand scrutiny under *Edmond,* we held it to be invalid under the Fourth Amendment.

■ Mindful of the aforementioned principles, we now review the purpose the checkpoint in this matter was intended to serve. The Court of Appeals concluded, as did the trial court, that the checkpoint's purpose was "to regulate compliance with a local ordinance requiring residents of Liberty and non-residents working in the city to purchase and display a city sticker." The Court of Appeals found the checkpoint to be constitutionally valid because it was sufficiently similar to the purpose approved by the United States Supreme Court in *Delaware v. Prouse,*—i.e., checking motorists for driver's license and vehicle registration violations. The Court of Appeals then upheld Liberty's checkpoint because it was established and conducted according to the kind of systematic and non-discretionary plan outlined in *Buchanon.* However, the Court of Appeals misreads the relevant cases.

Appellant vigorously contends that checking for city sticker ordinance violations is not an acceptable purpose for a traffic checkpoint that stops and detains motorists without any individualized suspicion of wrongdoing. He argues that the use of the checkpoint to root out city sticker law violators suffers from the same deficiency as the drug interdiction checkpoint found unconstitutional in *Edmond.* Appellant asserts that in both cases, the checkpoints were designed for the sole purpose of catching lawbreakers, or "detect[ing] evidence of criminal wrongdoing," with no direct concern for highway safety or border security. *Edmond,* 531 U.S. at 41, 121 S.Ct. 447.

*1.A checkpoint established for the purpose of general crime control, or detection of ordinary criminal wrongdoing includes violations of a city ordinance.*

The Commonwealth posits the view that Liberty's checkpoint did not run afoul of *Edmond* because a city ordinance violation is not a "crime" as defined in KRS 500.080(2),[6] and therefore, a roadblock detaining motorists to verify compliance with a city ordinance is not for the purpose of ordinary "crime" control. We need not parse the definition of "crime," and in any case it is unlikely that the United States Supreme Court in *Edmond* took into account Kentucky's statutory definition of "crime." The Commonwealth views *Edmond* too narrowly and overlooks the principle upon which *Edmond* is based.

■ *Edmond* noted that "each of the checkpoint programs that we have approved [referring to *Sitz, Prouse, and Martinez–Fuerte* ] was designed primarily to serve purposes closely related to the problems of policing the border or the necessity of ensuring roadway safety." *Edmond,* 531 U.S. at 42, 121 S.Ct. 447. "We decline to suspend the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes. We cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime." *Id.* at 44, 121 S.Ct. 447.

■ The rule established in *Edmond* does not depend upon the classification of the offense that a checkpoint was set up to discover. It turns upon the principle that a checkpoint set up to stop vehicles without individualized indicia of suspicion on the random chance of catching a law breaker is too great a breach in the wall of protection provided by the Fourth Amend-

---

6. KRS 500.080(2) defines "crime" as a misdemeanor or a felony. A city ordinance viola- tion is neither a misdemeanor nor a felony.

ment. The United States Supreme Court in *Edmond* condemned the highway checkpoint set up for general crime control (and specifically for drug law violations) because, if roadblocks so established were approved by the courts:

> there would be little check on the ability of the authorities to construct roadblocks for almost any conceivable law enforcement purpose. Without drawing the line at roadblocks designed primarily to serve the general interest in crime control, the Fourth Amendment would do little to prevent such intrusions from becoming a routine part of American life.

*Id.* at 42, 121 S.Ct. 447.

The concern voiced by the United States Supreme Court as the rational underpinning of *Edmond* is in no way lessened when the roadblock is used to detect violations of a city ordinance rather than a felony or misdemeanor. The threat to individual liberty is the same.

 Indeed, a city ordinance would appear to be of lesser stature than a "crime" as used in *Edmond,* and thus rather than distinguishing *Edmond,* the better assessment would appear to be that *Edmond* would apply with even more force against a roadblock set up solely to detect violations of a city ordinance. We also recall that the initial concern that sparked the need for the checkpoint was the report that some teachers had failed to pay the sticker fee. That concern could have been addressed by means far less intrusive than a traffic checkpoint. For example, police officers could have simply walked through the school parking lot and cited cars without a sticker. An appropriate factor to consider when assessing the validity of a traffic checkpoint is whether an alternate, less intrusive means is available to achieve the same objective.

**2. A traffic checkpoint to monitor compliance with laws regulating vehicle licensing and operation is valid only if rationally related to the need for highway safety.**

 The Commonwealth argues that *Prouse* should be read as approving traffic checkpoints designed to verify compliance with vehicle registration and operator licensing laws which have no impact upon highway safety. We must disagree. In *Prouse,* the checkpoint's purpose was found valid only because the licensing and registration requirements advanced the public interest in highway safety:

> We agree that the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed. Automobile licenses are issued periodically to evidence that the drivers holding them are sufficiently familiar with the rules of the road and are physically qualified to operate a motor vehicle. The registration requirement and, more pointedly, the related annual inspection requirement in Delaware are designed to keep dangerous automobiles off the road. Unquestionably, these provisions, properly administered, are essential elements in a highway safety program.

*Prouse,* 440 U.S. at 658, 99 S.Ct. 1391 (footnotes omitted).

This point was expressly confirmed in *Edmond,* "Not only does the common thread of highway safety thus run through *Sitz* and *Prouse,* but *Prouse* itself reveals a difference in the Fourth Amendment significance of highway safety interests and the general interest in crime control." *Edmond,* at 40, 121 S.Ct. 447.

As the trial court found, the City of Liberty's sticker ordinance "does not have as its purpose anything remotely connected to border patrol or highway safety." We find nothing in the record to refute that finding. It is also apparent that the checkpoint had no information-seeking function of the sort approved in *Lidster*. The checkpoint's only purpose was to enforce a revenue-raising tax upon vehicles in the city. Thus, the checkpoint to enforce the sticker ordinance comports with none of the purposes which the United States Supreme Court has found to be important enough to override the individual liberty interests secured by the Fourth Amendment.

### III. CONCLUSION

For the reasons set forth above, we conclude that Appellant's detention at the checkpoint unduly infringed upon his Fourth Amendment right to be free from unreasonable seizures of his person and searches of his property. The evidence procured as a result of his unconstitutional detention was properly suppressed by the trial court. Accordingly, we reverse the opinion of the Court of Appeals in this matter, and remand this cause to the Casey Circuit Court for further proceedings consistent herewith.

All sitting. All concur.