JONES, JUDGE:
The Commonwealth appeals from an order of the Oldham Circuit Court denying its motion for a writ of prohibition and mandamus. Following review of the record and applicable law, we affirm.
I. BACKGROUND
In the early morning of March 22, 2015, Paul Brady was stopped at a traffic safety checkpoint set up on the northbound exit *477 ramp of I-71 at its intersection with Highway 53 in Oldham County, Kentucky. As a result of this stop, Brady was arrested and charged with DUI. On Brady's motion, Oldham District Court Judge Diane Wheeler conducted a suppression hearing on May 11, 2016.
KSP[1] Trooper Barrett Brewer was the sole testifying witness at the suppression hearing. Trooper Brewer testified that he set up the checkpoint at a preapproved location at 1:32 a.m. on March 22, 2015. The checkpoint had been approved to be conducted from 1:30 a.m. to 3:30 a.m.; however, Trooper Brewer stated that he shut the checkpoint down at 2:31 a.m. following Brady's arrest. Trooper Brewer testified that either he or the officer from the Oldham County Police Department working the checkpoint with him stopped every vehicle passing through the checkpoint and asked the drivers the same questions. He stated that weather conditions were favorable on the night in question. While Trooper Brewer acknowledged that he had not set up signs or cones warning drivers of the upcoming checkpoint, he and the officer working the checkpoint with him had the lights of their vehicles flashing and were both wearing traffic safety vests. Trooper Brewer acknowledged that it is department policy that media notices advising of traffic checkpoints in the area be sent out monthly; however, he was unaware if a media notice had been sent out in March of 2015. The Commonwealth offered as an exhibit a media notice sent out in May of 2015, which it stated was indicative of the notice that should have been sent out in March, but did not present any evidence showing that a media notice was sent out for March of 2015.
On October 14, 2016, Judge Wheeler granted Brady's motion to suppress evidence obtained as a result of the checkpoint. In finding that the checkpoint did not meet constitutional muster, Judge Wheeler applied her findings of fact to the four factors set out by the Kentucky Supreme Court in Commonwealth v. Buchanon , 122 S.W.3d 565 (Ky. 2003), to determine the reasonableness of a traffic checkpoint: (1) whether "decisions regarding the location, time, and procedures" governing the checkpoint are determined by an officer in a supervisory position, as opposed to an officer in the field; (2) whether the law enforcement official working the checkpoint has complied with the procedures established by the superior officer "so that each motorist is dealt with in exactly the same manner"; (3) whether the nature of the checkpoint is readily apparent to approaching motorists; and (4) the length of the stop. Id. at 571. Judge Wheeler found that there had been no evidence presented calling the length or intrusiveness of the stop into question; therefore, the fourth Buchanon factor was satisfied. Additionally, while Judge Wheeler noted that Trooper Brewer's dual role as both a supervisor and an officer in the field weighed against the Commonwealth, she found that Trooper Brewer and the KSP had substantially complied with the first and second Buchanon factors. Judge Wheeler noted that, in a prior ruling of the Oldham District Court, the district court had found that the location of the checkpoint had been preapproved. Further, Judge Wheeler noted that Trooper Brewer's testimony that he and his accompanying officer had stopped each vehicle approaching the checkpoint and asked them the same questions was in accord with requirements from existing case law. As to the third factor, however, Judge Wheeler expressed "grave concerns" about the visibility and notice of the *478 checkpoint. She noted that the Trooper Brewer had testified that he was unaware if a media notice was given for March of 2015, and that the Commonwealth had offered no evidence of the same. Further, she expressed concern that there had been no warnings, signs, or notices advising the public of the upcoming checkpoint. Accordingly, Judge Wheeler concluded that the traffic checkpoint had been unreasonable and infringed upon Brady's civil liberties.
On October 17, 2016, the Commonwealth filed a petition for writ of prohibition and mandamus with the Oldham Circuit Court requesting that the circuit court direct Judge Wheeler to reverse her suppression order. The Commonwealth contended that, in granting Brady's motion to suppress, Judge Wheeler had acted within her jurisdiction but erroneously. Additionally, the Commonwealth alleged that it would suffer irreparable injury if its requested relief was not granted, as it would have insufficient evidence to prosecute Brady for DUI. The Commonwealth contended that Judge Wheeler's analysis of the reasonableness of the traffic checkpoint was erroneous as she had conclusively relied on the fact that there were no warning signs posted advising of the checkpoint and that there had been no media notice. Brady's response conceded that the Commonwealth had no adequate remedy by way of appeal, but contended that the Commonwealth's inability to successfully prosecute its case did not rise to the level of injury required to grant a writ of prohibition. Additionally, Brady contended that Judge Wheeler's order was legally and factually correct.
The circuit court denied the Commonwealth's petition for a writ on February 28, 2017. First, addressing Brady's contention that the Commonwealth had failed to demonstrate that it would suffer irreparable injury without the grant of a writ, the circuit court concluded that a substantial miscarriage of justice may result if the Commonwealth was unable to use the evidence suppressed by the district court in its prosecution of Brady. Ultimately, however, the circuit court found that Judge Wheeler's findings of fact were supported by substantial evidence and that her decision to suppress the evidence was correct as a matter of law. The circuit court noted that the presence of signs and/or media notices advising the public of an impending checkpoint may not be mandatory. However, the circuit court found that Judge Wheeler was acting properly when she balanced the lack of notice against the other Buchanon factors and concluded that the checkpoint was unreasonable.
This appeal followed.
II. STANDARD OF REVIEW
An appellate court utilizes a three-part analysis in reviewing the grant or denial of a writ. Appalachian Racing, LLC v. Commonwealth , 504 S.W.3d 1, 3 (Ky. 2016). The lower court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo . Id. (citing Grange Mut. Ins. Co. v. Trude , 151 S.W.3d 803, 810 (Ky. 2004) ). Ultimately, however, "[w]hether to grant or deny a writ of prohibition is within the sound discretion of the court with which the petition is filed." Commonwealth v. Peters , 353 S.W.3d 592, 595 (Ky. 2011) (citing Haight v. Williamson , 833 S.W.2d 821, 823 (Ky. 1992) ). Accordingly, "we will not reverse the lower court's ruling absent a finding that the determination was 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.' " Appalachian Racing , 504 S.W.3d at 3 (quoting Commonwealth v. English , 993 S.W.2d 941, 945 (Ky. 1999) ).
*479 III. ANALYSIS
"Relief by way of prohibition or mandamus is an extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief." Bender v. Eaton , 343 S.W.2d 799, 800 (Ky. 1961). There are two general classes under which relief by way of a writ may be granted: (1) where a court is acting without jurisdiction or beyond its jurisdiction and (2) where a court is acting erroneously within its jurisdiction. Id. "When, as here, the petitioner alleges that the trial court is acting erroneously, though within its jurisdiction, a writ will only be granted when two threshold requirements are satisfied: there exists no adequate remedy by appeal or otherwise; and the petitioner will suffer great and irreparable harm." Peters , 353 S.W.3d at 595 (citing Hoskins v. Maricle , 150 S.W.3d 1, 18 (Ky. 2004) ).
The Commonwealth has established that it satisfies the above threshold requirements. Following the district court's order suppressing the evidence against Brady, the Commonwealth could either proceed to trial without sufficient evidence to successfully prosecute Brady or seek interlocutory review of the suppression order. Had the Commonwealth elected to take the first path, it would be constitutionally prohibited from seeking review of the suppression order upon Brady's acquittal. KY. CONST. § 115 ("[T]he Commonwealth may not appeal from a judgment of acquittal in a criminal case ...."). " KRS 2 23A.080, the statute addressing appeals from district to circuit court, makes no provision for interlocutory appeals." Commonwealth v. Williams , 995 S.W.2d 400, 402 (Ky. App. 1999). Accordingly, the Commonwealth's only available avenue for relief from the suppression order was to seek a writ of mandamus or prohibition with the circuit court. Tipton v. Commonwealth , 770 S.W.2d 239, 241 (Ky. App. 1989), abrogated in part on other grounds by Hoskins v. Maricle , 150 S.W.3d 1 (Ky. 2004). Additionally, if Judge Wheeler acted erroneously in suppressing the evidence against Brady, the Commonwealth would suffer irreparable injury. Our courts have classified the requisite level of injury for the grant of a writ of prohibition as "something of a ruinous nature." Bender 343 S.W.2d at 801 (citing Osborn v. Wolfford , 239 Ky. 470, 39 S.W.2d 672 (1931) ). "The 'great injustice' and 'harm' afforded the Commonwealth by proceeding to trial without crucial evidence cannot be undone." Commonwealth v. Bell , 365 S.W.3d 216, 223 (Ky. App. 2012). Therefore, we agree with the Commonwealth that it would suffer irreparable injury if Judge Wheeler erred in suppressing its evidence against Brady.
Finding that the Commonwealth meets the threshold requirements, we must determine whether Judge Wheeler's conclusion that the evidence against Brady should be suppressed was erroneous. The Commonwealth contends that Judge Wheeler's finding that the checkpoint lacked sufficient visibility was not supported by any evidence and that her conclusion, based on that finding, that the checkpoint constituted an unconstitutional seizure was erroneous.
"It is well established that a highway stop of motorists at a government-operated checkpoint effectuates a seizure for Fourth Amendment purposes." Buchanon , 122 S.W.3d at 568 (citing Michigan Dept. of State Police v. Sitz , 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412, 420 (1990) ;
*480 United States v. Martinez-Fuerte , 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116, 1128 (1976) ). "In order to pass constitutional muster, the seizure must be deemed reasonable, which requires 'a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.' " Id. (quoting Brown v. Texas , 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (1979) ). Additionally, checkpoints "must have a 'primary purpose,' such as keeping the roads safe from impaired drivers or maintaining border security." Commonwealth v. Cox , 491 S.W.3d 167, 170 (Ky. 2015) (citing City of Indianapolis v. Edmond , 531 U.S. 32, 47, 121 S.Ct. 447, 457, 148 L.Ed.2d 333 (2000) ).
As briefly noted supra , p. 477, in Buchanon the Kentucky Supreme Court set out four "non-exclusive factors courts may consider in determining the reasonableness of a particular roadblock." Buchanon , 122 S.W.3d at 570. Those factors are set out in full as follows:
First, it is important that decisions regarding the location, time, and procedures governing a particular roadblock should be determined by those law enforcement officials in a supervisory position, rather than by the officers who are out in the field. Any lower ranking officer who wishes to establish a roadblock should seek permission from supervisory officials. Locations should be chosen so as not to affect the public's safety and should bear some reasonable relation to the conduct law enforcement is trying to curtail.
Second, the law enforcement officials who work the roadblock should comply with the procedures established by their superior officers so that each motorist is dealt with in exactly the same manner. Officers in the field should not have unfettered discretion in deciding which vehicles to stop or how each stop is handled.
Third, the nature of the roadblock should be readily apparent to approaching motorists. At least some of the law enforcement officers present at the scene should be in uniform and patrol cars should be marked in some manner. Signs warning of a checkpoint ahead are also advisable.
Fourth, the length of a stop is an important factor in determining the intrusiveness of the roadblock. Motorists should not be detained any longer than necessary in order to perform a cursory examination of the vehicle to look for signs of intoxication or check for license and registration. If during the initial stop, an officer has a reasonable suspicion that the motorist has violated the law, the motorist should be asked to pull to the side so that other motorists can proceed.
Id. at 571. The Buchanon court emphasized that a violation of one of the above-listed factors would not "automatically result in a violation of constitutional proportions[,]" but rather that the factors should be "applied on a case-by-case basis in order to determine the reasonableness of each roadblock." Id.
In Cox , the Kentucky Supreme Court reexamined the four Buchanon factors. The facts in Cox are substantially similar to the case sub judice . In Cox , the defendant was stopped at a KSP-operated traffic checkpoint, arrested, and charged with DUI. The facts demonstrated that the checkpoint had been set up moments after troopers received approval to operate it, that there were no media announcements that traffic checkpoints were planned, and that there were no signs indicating an upcoming checkpoint. Troopers working the checkpoint did have the emergency lights on their vehicles activated and every vehicle approaching the checkpoint was *481 stopped and checked. Cox , 491 S.W.3d at 169. In analyzing the constitutionality of the checkpoint, the Court, like the district court in this case, found that the fourth Buchanon factor had been complied with and that, while there were some concerns with KSP's compliance with the first and second Buchanon factors, those factors appeared to be satisfied. Id. at 171-72. As to the third Buchanon factor-visibility-the Court stated that it "consider[ed] this factor effectively to require adequate notice." Id. at 172. The Court acknowledged that the troopers present at the checkpoint did have on their emergency lights and were in uniform, but found that this was "not enough to provide adequate notice to approaching motorists." Id. Following its analysis, the Court found that it "simply cannot conclude that law enforcement adequately complied with the Buchanon factors substantially enough to render this roadblock a 'reasonable' seizure performed in the absence of a warrant or individualized suspicion." Id. at 173.
In the instant case, we cannot agree with the Commonwealth that Judge Wheeler's finding that the checkpoint lacked the requisite "visibility" was unsupported by the evidence. Trooper Brewer testified to the fact that there were no road signs or cones set up to notify the public that a checkpoint was taking place. While Trooper Brewer testified to his assumption that a media notice advising the public as to the forthcoming checkpoint was issued, the Commonwealth was unable to proffer any evidence demonstrating that a notice was actually issued in March of 2015. Instead, the Commonwealth submitted a media notice issued in May of 2015 as proof that a similar one would have been issued in March. This is insufficient. Trooper Brewer testified that he and the Oldham County police officer working the checkpoint with him both had activated the emergency lights on their vehicles and were both wearing traffic safety vests. According to Cox , however, "this is not enough to provide adequate notice to approaching motorists." Id. at 172. Accordingly, Judge Wheeler's findings concerning the third Buchanon factor were supported by substantial evidence.
The Commonwealth contends that we must distinguish the instant case from Cox and reverse the Circuit Court's order denying its petition for a writ of prohibition because the checkpoint at issue in this case "is a work of art in comparison to the checkpoint denigrated by the Kentucky Supreme Court in Cox ." To support this contention, the Commonwealth notes that Judge Wheeler found that the checkpoint at issue in this case was not a hastily arranged checkpoint, as the one in Cox was. Judge Wheeler made no such finding. While she did find that Trooper Brewer received prior approval to conduct the checkpoint, she also noted that Trooper Brewer could not testify as to when permission was given to establish the checkpoint. At any rate, while the Cox court did note that it "strongly disfavor[s] hastily arranged highway checkpoints," this statement was made in discussing the Court's conclusion that proper planning and notice are required for checkpoints-i.e. , if a checkpoint is hastily arranged, it is unlikely that adequate notice of the checkpoint will have been given. Id. at 171.
The thrust of the Court's decision in Cox was that KSP had failed to provide sufficient notice of the checkpoint. The "notice" provided by KSP in Cox -activated emergency lights at the checkpoint and uniformed officers-is identical to the notice provided in the case sub judice . It was inadequate and, therefore, the third Buchanon factor was not satisfied.
While perfect compliance with Buchanon is not required, "we must err on the *482 side of caution when dealing with the most fundamental of those rights granted to our citizens to be free from unreasonable searches and seizures." Buchanon , 122 S.W.3d at 570. A review of Judge Wheeler's order indicates that she considered the totality of the circumstances surrounding the checkpoint at issue in determining that the checkpoint did not satisfy constitutional requirements. We cannot find that Judge Wheeler's determination that the checkpoint was an unconstitutional seizure under Buchanon and Cox was erroneous. Accordingly, the Circuit Court did not err in denying the Commonwealth's petition for a writ of prohibition and mandamus.
IV. CONCLUSION
In light of the foregoing, the order of the Oldham Circuit Court is AFFIRMED.
ALL CONCUR.

Kentucky State Police.