**COMMONWEALTH of Kentucky,
Appellant,**

v.

**James P. RHODES, III, Appellee.**

**No. 95–CA–1495–DG.**

Court of Appeals of Kentucky.

Nov. 22, 1996.

Case Ordered Published by
Court of Appeals Nov. 22, 1996.

Discretionary Review Denied by
Supreme Court Aug. 27, 1997.

Chris Gorman, Attorney General, Perry T. Ryan, Assistant Attorney General, Frankfort, for Appellant.

John Douglas Hubbard, Michelle A. Buckley, Fulton, Hubbard & Hubbard, Bardstown, for Appellee.

Before WILHOIT, C.J., and DYCHE and GUDGEL, JJ.

DYCHE, Judge.

The Commonwealth of Kentucky has been granted discretionary review of the Nelson Circuit Court's judgment reversing James Rhodes III's conviction for driving under the influence. We affirm in part, reverse in part and remand to the Nelson District Court.

On September 11, 1993, Kentucky State Trooper Mitch Gosser noticed appellee driving erratically. The trooper decided to pull Rhodes over on suspicion of drunk driving, but Rhodes had other plans. Rhodes finally stopped his vehicle in the parking lot of a Holiday Inn. Gosser administered three field sobriety tests and a preliminary breath test ["PBT"]. Rhodes failed all of them, and he was arrested for driving under the influence ["DUI"] and reckless driving.

A Nelson District Court jury found Rhodes guilty as charged, and he was sentenced to fifteen days in jail for the DUI. He received fines totalling $600.00. On direct appeal, the Nelson Circuit Court reversed the convictions, and the Commonwealth was granted discretionary review of that ruling by this Court.

■ We agree with the Commonwealth's first argument that the district court properly refused to suppress the blood alcohol concentration ["BAC"] results of the IntoxilyzerTM 5000. The Nelson Circuit Court had ruled the results inadmissible because the Secretary of the Justice Cabinet had not approved the individual model pursuant to KRS 189A.300. The specific language of the statute requires the Secretary "or his designee" to approve "all units." The circuit court construed this language as requiring certifi-

cation of every breath alcohol analysis unit used in the Commonwealth.

This interpretation would produce an absurd result. The IntoxilyzerTM 5000 was approved as a proper testing unit by memorandum of the Secretary of the Justice Cabinet on June 1, 1991. Furthermore, a lab technician for the Commonwealth testified that he had inspected the instrument just twelve days prior to appellee's arrest. Therefore the Nelson Circuit Court erroneously reversed the DUI conviction on this issue.

■ We likewise agree with the Commonwealth that the opinion testimony of the state trooper on the issue of intoxication was admissible. "[A] conviction may stand upon the testimony of the police without resort to the various devices." *Commonwealth v. Hicks*, Ky., 869 S.W.2d 35, 37 (1994). Trooper Gosser observed appellee's driving and physical condition before administering the various and sundry tests for inebriation. Gosser was thus qualified as a witness, both lay and expert, to offer his opinion that Rhodes was intoxicated. *See Smith v. Commonwealth*, Ky., 321 S.W.2d 786, 789 (1959). Although the trooper's choice of the word "drunk" was perhaps distasteful to appellee, we fail to conclude that it was reversible error. The circuit court incorrectly held it to be so.

We next must address the issue of the admissibility of the results of the Alco SensorTM III PBT. The circuit court found reversible error in allowing the trooper to testify that Rhodes had failed this test. This Court has ruled that such test results are admissible in *Allen v. Commonwealth*, Ky. App., 817 S.W.2d 458 (1991).

■ Nonetheless, in order for the results to be received into evidence, the test must be properly conducted. By the trooper's own testimony, he stopped Rhodes at 1:10 a.m. and placed him under arrest at 1:20 a.m., having already administered all field sobriety tests. The Alco SensorTM III's operating manual, which appears in the circuit court record, requires a fifteen minute waiting period before conducting the test. These results were therefore unreliable given the manufacturer's own instructions.

■ However, it appears from the district court record that the matter of the operating manual was not addressed at the trial level. Absent an objection specifying this unreliability of the test's results, the issue was not properly preserved for review. RCr 9.22. The circuit court incorrectly found reversible error in this regard.

■ We similarly have no problem with the Commonwealth introducing evidence of the Horizontal Gaze Nystagmus ["HGN"] test. The circuit court found this testimony inadmissible, stating that the HGN test "encompasses attributes of a test scientific in nature."[1] As such, the circuit court held that a proper foundation should have been laid upon which the trial court could then make a finding regarding the scientific validity of the test. *See Dyer v. Commonwealth*, Ky., 816 S.W.2d 647 (1991). *See also Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995).

Other states[2] that have held the HGN test to be not scientific in nature require at least

---

1. For jurisdictions holding the HGN to be scientific in nature *see State v. Witte*, 251 Kan. 313, 836 P.2d 1110 (1992); *State v. Cissne*, 72 Wash. App. 677, 865 P.2d 564 (1994); *People v. Quinn*, 153 Misc.2d 139, 580 N.Y.S.2d 818 (1991); *Commonwealth v. Miller*, 367 Pa.Super. 359, 532 A.2d 1186 (1987); *People v. Williams*, 3 Cal.App.4th 1326, 5 Cal.Rptr.2d 130 (1992); *Johnson v. State*, 591 So.2d 580 (Ala.Cr.App., 1991); *Schultz v. State*, 106 Md.App. 145, 664 A.2d 60 (1995); *Commonwealth v. Stringer*, 451 Pa.Super. 180, 678 A.2d 1200 (1996); *State v. Klawitter*, 518 N.W.2d 577 (Minn.1994); *People v. Leahy*, 8 Cal.4th 587, 882 P.2d 321, 34 Cal.Rptr.2d 663 (1994).

2. *See State ex rel. McDougall v. Ricke*, 161 Ariz. 462, 778 P.2d 1358 (1989); *People v. Joehnk*, 35 Cal.App.4th 1488, 42 Cal.Rptr.2d 6 (Cal.App. 4 Dist., 1995); *State v. Bresson*, 51 Ohio St.3d 123, 554 N.E.2d 1330 (1990); *State v. Superior Court In and For Cochise County*, 149 Ariz. 269, 718 P.2d 171 (1986); *State v. Murphy*, 451 N.W.2d 154 (Iowa, 1990); *State v. Edman*, 452 N.W.2d 169 (Iowa, 1990); *State v. O'Key*, 321 Or. 285, 899 P.2d 663 (1995); *Emerson v. State*, 880 S.W.2d 759 (Tex.Cr.App., 1994); *Blake v. State*, 581 So.2d 1282 (Ala.Cr.App., 1991); *State v. Armstrong*, 561 So.2d 883 (La.App. 2 Cir., 1990); *State v. Klawitter*, 518 N.W.2d 577 (Minn., 1994); *State v. Garris*, 603 So.2d 277 (La.App. 2 Cir., 1992).

some foundational testimony that the officer was trained and certified, that the test was properly administered, and that the proper procedures were employed. *See State v. Armstrong,* 561 So.2d 883 (La.App. 2 Cir., 1990).

We have reviewed the videotape of the trial and can find no evidence that Trooper Gosser had received any training or certification in HGN testing. He did testify that he was a police officer for seven years. Gosser stated that he had been trained and certified at the police academy in breathalyzer testing, and that he was recertified every two years. He had made between forty to fifty arrests in the previous six months and had testified in numerous cases. Gosser went into detail about the procedures he used in testing for HGN and that Rhodes failed "all six portions of the test."

No specific objection was made to the officer's qualifications. Defense counsel merely objected on grounds of hearsay when the officer opined that the jerkiness of the eye tracking indicated the presence of alcohol "most of the time." The district court overruled the objection, stating that the matter was "in the officer's training." Given these circumstances, we cannot say that the trial court erroneously admitted the HGN testimony.

■ There was sufficient evidence from the subsequent IntoxilyzerTM 5000 test (Rhodes had a BAC of .116%) to find appellee guilty. *See King v. Commonwealth,* Ky. App., 875 S.W.2d 902 (1993). Because of appellee's reckless driving, Officer Gosser had probable cause to stop Rhodes. Appellee admitted to drinking one beer; he smelled of alcohol and failed the walk and turn test and the one leg stand (having dropped his foot eleven times in thirty seconds). Therefore, the errors, if any, committed in admitting the PBT and HGN evidence were not prejudicial. Furthermore, we trust that the defense will be more specific in dealing with these evidentiary considerations on retrial.

In light of our reversal a later issue, the problem of the two jurors is deemed moot, and we decline to further belabor this opinion with a discussion of same.

We next must address the matter of directed verdict of acquittal. The circuit court's ruling on this issue was based on its earlier finding that neither of the BAC readings nor the HGN test results were admissible. Since we have concluded that the IntoxilyzerTM 5000 results were properly admitted and that the circuit court erroneously reversed on the PBT and HGN evidence, we hold that the circuit court also erroneously determined that a directed verdict of acquittal should have been granted on the issue of *per se* driving under the influence. KRS 189A.010(a). Additionally, the instructions were properly drafted.

■ On the final topic of polling the jury, we find the error reversible. We remind the trial court that RCr 9.88 mandates that each juror be asked about the verdict. Rhodes requested that the jury be polled; the trial court asked the panel as a whole, rather than each juror individually, about the verdict. This did not satisfy the Rule's requirement nor purpose. *See Powell v. Commonwealth,* Ky., 346 S.W.2d 731, 732–733 (1961).

The judgment of the Nelson Circuit Court is affirmed in part, reversed in part, and the matter is remanded to the Nelson District Court for proceedings not inconsistent with this opinion.

All concur.