RENDERED:  OCTOBER 15, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0652-MR

BUDDY LONGWELL                                         APPELLANT

APPEAL FROM ADAIR CIRCUIT COURT
HONORABLE JUDY VANCE MURPHY, JUDGE
ACTION NO. 18-CR-00236

v.

COMMONWEALTH OF KENTUCKY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND TAYLOR, JUDGES.

MAZE, JUDGE:  Appellant, Buddy Longwell, appeals the Adair Circuit Court's

judgment confirming a jury verdict sentencing him to five years' imprisonment for

driving under the influence (DUI), enhanced to fifteen years for being a persistent

felony offender.  Longwell was also given thirty days' imprisonment for operating

on a suspended license and a fine of $100.00 for failure to produce insurance.  For the following reasons, we affirm.

BACKGROUND

On October 13, 2018, around 8:30 p.m., Kentucky State Police Trooper Allen Shirley observed Longwell driving southbound on South Highway 61 in Adair County.  Longwell's truck crossed the center line and veered into the lane of oncoming traffic several times.  Trooper Shirley ran the license plate on his mobile data terminal and discovered that the owner of the vehicle had a suspended license.  Longwell was also driving about 45 miles per hour in a 55 mile per hour zone.

Trooper Shirley pulled Longwell over.  Upon approaching Longwell's vehicle, Trooper Shirley noticed Longwell pulling his pants up.  Longwell's wife was in the passenger seat.  Longwell had dilated pupils with slurred and labored speech, and had difficulty processing questions and answering them.  Trooper Shirley asked Longwell why he was pulling his pants up and Longwell stated that his wife was performing oral sex on him while he drove.

When retrieving his insurance card, Longwell testified that Trooper Shirley saw his prescription bottles in the console of his truck.  Longwell admitted to Trooper Shirley that he had taken hydrocodone earlier in the day.  (Trooper Shirley testified that Longwell admitted he had taken Xanax four or five hours

-2-

earlier.  Regardless, at trial, Longwell admitted that he had prescriptions for both hydrocodone and Xanax and introduced a log of his prescriptions into evidence.)

Trooper Shirley had Longwell exit the truck and then administered the modified Romberg balance and horizontal gaze nystagmus field sobriety tests.  The one-leg stand and walk and turn tests were not performed because Longwell said he had a prior leg injury.  Longwell showed a lack of convergence and nystagmus at all six points in both eyes with a lack of smooth pursuit.  He failed all tests except the count-backwards test.

After Trooper Shirley arrested Longwell for DUI, Longwell stepped toward Trooper Shirley and stated he "wasn't taking no fucking blood test."  The officer then moved the handcuffs from Longwell's front to behind his back to keep the situation from escalating.  Trooper Shirley also asked Longwell's wife to perform field sobriety tests and directed her to find other transportation home because she was not in a condition to drive.

Trooper Shirley transported Longwell to T.J. Samson Hospital for a blood test.  Trooper Shirley advised Longwell of his rights pursuant to KRS[1] 189A.105, also known as the "implied consent warning," and informed Longwell that he could attempt to contact an attorney before agreeing to submit to the blood test.

---

[1] Kentucky Revised Statutes.

Longwell told Trooper Shirley that he wanted to contact Attorney David Cross. After learning that Longwell did not have Attorney Cross' phone number, Trooper Shirley used his cellphone to perform a Google search for Attorney Cross. The search produced Attorney Cross' office number, but not his home number. Based on Trooper Shirley's testimony, after he told Longwell that he was unable to locate Attorney Cross' home number, Longwell abandoned his desire to contact an attorney, stating: "just forget it." Based on Longwell's testimony, however, after Trooper Shirley's search failed to produce Attorney Cross' home number, he told Trooper Shirley, "well let me contact my wife, she works for him." He claims Trooper Shirley denied his request.

After Longwell refused to submit to the blood test, he was transported to the local jail and charged. Longwell was subsequently indicted on five counts: (1) operating a motor vehicle while under the influence – fourth or subsequent offense;[2] (2) being a persistent felony offender in the first degree;[3] (3) operating on a suspended license;[4] (4) reckless driving;[5] and (5) failure to produce insurance.[6]

---

[2] KRS 189A.010(5)(d).

[3] KRS 532.080(3).

[4] KRS 186.620(2).

[5] KRS 189.290.

[6] KRS 304.39-117.

Before trial, Longwell filed a motion to suppress, arguing that his arrest and evidence of his refusal to submit to a blood test should be excluded because he was not provided a reasonable opportunity to contact his attorney. The trial court held a hearing in April 2019 at which Trooper Shirley, Longwell, and Longwell's wife testified and, subsequently, the parties submitted memoranda in support of their respective positions.

On September 27, 2019, the trial court denied Longwell's motion to suppress, finding the police made reasonable efforts to accommodate Longwell's request to contact an attorney. Specifically, the trial court found that Longwell did not tell Trooper Shirley he wanted to contact his wife for the purpose of obtaining Attorney Cross' telephone number:

> The Defendant did not tell the officer that he wanted to call his wife so that she could provide him with Attorney David Cross' telephone number. The Defendant testified that he told the officer that he wanted to contact his wife. Officers are not required to allow Defendants to contact employees of attorneys. Officers are required to make reasonable efforts to permit persons in custody to attempt to contact and communicate with an *attorney*. KRS 189A.105(3). This Court observed the testimony and demeanor of all the witnesses and this Court is not convinced that the Defendant communicated to Trooper Shirley that he wanted to contact his wife for the purpose of obtaining Attorney David Cross' telephone number.

(Emphasis in original.) The trial court further held that Longwell "unequivocally refused" to submit to any blood test before even arriving at the hospital and suppression was not justified.

Trial was held on January 21, 2020. Trooper Shirley testified for the Commonwealth. Longwell testified in his own defense, along with his wife and Attorney Cross' wife. The jury found Longwell guilty on all five counts. On April 28, 2020, the trial court entered a judgment and sentenced Longwell to fifteen years' imprisonment. This appeal followed. Additional facts will be developed as necessary.

STANDARD OF REVIEW

The standard of review of a trial court's ruling on a motion to suppress requires a two-step assessment. "The factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under *de novo* review." *Cummings v. Commonwealth*, 226 S.W.3d 62, 65 (Ky. 2007). If the trial court's findings of fact are supported by substantial evidence, they are conclusive. We also give due weight to inferences drawn from those facts by judges and local law enforcement officers. *Bhattacharya v. Commonwealth*, 292 S.W.3d 901, 903 (Ky. App. 2009). "A trial court's allegedly erroneous Fourth Amendment evidentiary rulings are reviewed under the 'harmless beyond a reasonable doubt' standard." *Commonwealth v.*

-6-

*McCarthy*, 628 S.W.3d 18, 26 (Ky. 2021), *reh'g denied* (Aug. 26, 2021) (citations omitted); U.S. CONST. amend. IV.

ANALYSIS

Longwell asserts four issues for his appeal. First, he claims the trial court erred by allowing evidence of his refusal to submit to a blood test. Second, Longwell claims the trial court erred by allowing Trooper Shirley to testify regarding the effects of prescription drugs on his alleged impairment. Third, Longwell claims the trial court gave improper instructions to the jury. Finally, he argues the cumulative effect of these errors deprived him of his constitutional rights.

**I.        The admissibility of Longwell's refusal to submit to a blood test.**

Longwell argues the trial court erred when it failed to suppress evidence that he refused to take the blood test. Specifically, Longwell claims the trial court's finding that he abandoned his request to speak to an attorney is clearly erroneous because his request to speak with his wife was to obtain his attorney's number. Thus, Longwell reasons that the police violated KRS 189A.105(3) by failing to provide him with a reasonable opportunity to contact his attorney and the trial court should have suppressed evidence of his refusal to take the blood test on that basis. Moreover, Longwell submits that, if he had been afforded a reasonable opportunity to contact his attorney, he may very well have requested or accepted

the blood test because he had a valid prescription for Xanax, which could have been a possible defense to his DUI charge or, at the very least, would have mitigated any speculation by the jury.

In response, the Commonwealth argues the trial court's findings were supported by Trooper Shirley's testimony and, thus, were not clearly erroneous. Further, the Commonwealth contends that, even if the police violated KRS 189A.105(3), such a violation does not justify suppression of Longwell's refusal to submit to a blood test.

Under KRS 189A.105(3), once Trooper Shirley asked Longwell to submit to a blood test, Longwell had the right to attempt to contact an attorney. KRS 189A.105(3) provides, in relevant part:

> During the period immediately preceding the administration of any test, the person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney and shall be informed of this right. Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests and the penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal.

While Longwell argues that Trooper Shirley violated this statute when he asked to contact his wife who worked for Attorney Cross' wife, the trial court heard all the testimony and was "not convinced that [Longwell] communicated to Trooper Shirley that he wanted to contact his wife for the purpose of obtaining

Attorney David Cross' telephone number." Thus, the trial court held that the police did not violate KRS 189A.105(3).

We will not disturb the trial court's findings regarding witness credibility. "Credibility determinations are the province of the trial court which we will not disturb on appeal." *Bhattacharya*, 292 S.W.3d at 904 (citing *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 118 (Ky. 1991)).

Moreover, we agree with the trial court's finding that Trooper Shirley was not required to allow Longwell to contact his wife who worked for Attorney Cross' wife. KRS 189A.105(3) requires the police to make reasonable efforts to permit defendants to "attempt to contact and communicate with *an attorney*." (Emphasis added.) The statute does not provide a defendant an attempt to contact a non-attorney.

Similarly, Longwell's argument that Trooper Shirley violated the third reasonable accommodation factor in *Commonwealth v. Bedway*, 466 S.W.3d 468, 474-75 (Ky. 2015), when Longwell was unable to call his wife or consult a phone book, is not persuasive. The *Bedway* factors are:

> (1) time of day; (2) whether the suspect is attempting to obtain the number(s) of a specific attorney whom he knows personally, or knows by reputation; (3) whether the suspect affirmatively states that a third party has an attorney phone number not available in the phonebook (i.e. home or cell number); and (4) whether the request is timely.

*Id.* While the *Bedway* factors are informative, the list is not exclusive. The trial court looks at these factors to determine if a defendant's rights under KRS 189A.105(3) have been "reasonably facilitated" under the totality of the circumstances. *Bedway*, 466 S.W.3d at 473. Here, Trooper Shirley accommodated Longwell by searching on his own phone via Google for Attorney Cross' telephone number. And, in this day and age, a Google search is more accommodating than a phonebook. Also, Longwell's argument that Trooper Shirley did not provide him with a phonebook fails because he never testified that he requested Trooper Shirley provide him with a phonebook. Longwell testified that he asked a nurse at the hospital for a phonebook and she said they did not have one. We conclude that the trial court did not err in finding Trooper Shirley provided reasonable efforts to accommodate Longwell under KRS 189A.105(3).

While we conclude that the trial court did not err in denying Longwell's motion to suppress based on the reasonable accommodations argument, we must address whether Longwell's refusal to submit to a blood test should have been suppressed considering the Kentucky Supreme Court's recent opinion in *Commonwealth v. McCarthy*, *supra*. This issue was not raised by either party below or on appeal.

At the time of the suppression hearing and trial, Longwell's refusal to submit to a blood test was admissible evidence of his guilt under KRS

189A.105(2)(a)1. Specifically, KRS 189A.105(2)(a)1. states that "if the person refuses to submit to such tests[,] [t]he fact of this refusal may be used against him . . . in court as evidence of violating KRS 189A.010[.]" Thus, at the time, the trial court properly admitted this evidence.

In the recent *McCarthy* opinion, the Kentucky Supreme Court held that a DUI defendant has a constitutional right to withhold consent to a warrantless blood test and this refusal to consent cannot be offered as evidence of defendant's guilt despite the express language of KRS 189A.105(2)(a)1. *McCarthy*, 628 S.W.3d at 32-33. The *McCarthy* Court concluded that the United States Supreme Court "altered the landscape" in DUI cases in the case of *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). *McCarthy*, 628 S.W.3d at 22. *Birchfield* clarified that the Fourth Amendment permits a warrantless breath test incident to an arrest for DUI, but not a warrantless blood test. *Birchfield*, 136 S. Ct. at 2177-78. Thus, a warrantless blood test is unreasonable under the Fourth Amendment unless valid consent is given or exigent circumstances justify the search. *Id*. at 2184-85. Consequently, the Court in *Birchfield* held that a state cannot criminalize a defendant's refusal to take a blood test. *Id.* at 2186.

The Kentucky Supreme Court in *McCarthy* held that the rule in *Birchfield* is not limited to only those state laws which attach separate criminal

-11-

sanctions to refusals. *McCarthy*, 628 S.W.3d at 33-34. The *McCarthy* Court further held that a defendant's refusal to take a blood test may not be introduced as evidence of guilt to support a DUI charge. *Id*. at 36. Based on this holding, Longwell's refusal to take a blood test would be inadmissible evidence of his guilt.

But in this case, Longwell never made an argument under *Birchfield*. Instead, he only moved to exclude his refusal to consent to the blood test based on the argument that the police failed to reasonably accommodate his request to contact an attorney. Indeed, Longwell used this evidence in his defense. He argued that if he had been able to contact his attorney that night, "he may very well have requested or accepted the [blood] test" because he "had a valid prescription for Xanax" and his attorney "would have almost certainly advised [him] to take the test, knowing that his prescription would be a defense to his charge for DUI." *See* Longwell's motion to suppress, p. 7.

While the *McCarthy* decision is very recent, Longwell's motion to suppress was heard and briefed in 2019 – three years after *Birchfield* was rendered. Longwell never raised the admissibility of his refusal under *Birchfield*, nor has he asked this Court to consider the effect of *McCarthy* on the fundamental fairness of his trial. Consequently, we find that the issue is not before this Court.

Even if we concluded that the trial court erred by allowing the Commonwealth to introduce evidence of Longwell's refusal to submit to the blood

test, the constitutional error was harmless beyond a reasonable doubt. *McCarthy*, 628 S.W.3d at 26 (citing *Chapman v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 828, 17 L. Ed. 705 (1967)). *Chapman* advises that:

> An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless. . . . [Before a federal constitutional error can be held harmless beyond a reasonable doubt] [we consider] whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction[.]

386 U.S. at 23-24, 87 S. Ct. at 828 (internal quotation marks and citation omitted). "The Court has the power to review the record *de novo* in order to determine an error's harmlessness. In so doing, it must be determined whether the [Commonwealth] has met its burden of demonstrating that the admission" of Longwell's refusal to submit to the blood test did not contribute to his conviction. *McCarthy*, at 628 S.W.3d at 38 (citing *Arizona v. Fulminante*, 499 U.S. 279, 295-96, 111 S. Ct. 1246, 1257, 113 L. Ed. 2d 302 (1991)). "The admission of [the refusal is] quantitatively assessed in the context of other evidence presented in order to determine whether its admission is harmless beyond a reasonable doubt." *Id.* (citation omitted) (quoting *Arizona*, 499 U.S. at 280, 111 S. Ct. at 1246). "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous," but "to find that error unimportant in relation to

-13-

everything else the jury considered on the issue in question, as revealed in the record." *Id.* (quoting *Yates v. Evatt*, 500 U.S. 391, 403, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432 (1991)).

Kentucky case law acknowledges the reasonableness of inferring that one is guilty of being intoxicated when he refuses to take a breath test, the belief being that the accused sober person would take a test to provide evidence in his favor, while the accused intoxicated person would refuse a test to avoid producing evidence against himself. *McCarthy*, at 628 S.W.3d at 38 (citing *Cook v. Commonwealth*, 129 S.W.3d 351, 360 (Ky. 2004)). "Nevertheless, a refusal may not have a relationship to guilt. When a defendant decides to testify, he may be asked his reason for refusing a test, and that reason may have no relation to his consciousness of guilt." *Id.* However, when a defendant decides not to testify, even if the Commonwealth "does not explicitly comment that the defendant's refusal of the test is an indication of guilt, without an admonition otherwise, the jury is left with the task of drawing reasonable inferences from the evidence." *Id.* (footnote omitted).

In this case, Longwell decided to testify. And, his reason for refusing the test had "no relation to his consciousness of guilt." *Id.* At trial, the Commonwealth specifically asked Longwell why he refused to take the blood test. He responded that Trooper Shirley "done made me mad" and "I'm stubborn." On

-14-

redirect, Attorney Cross asked Longwell if he would have taken his advice had he been able to speak with him that night and Longwell responded that he would have. The implication being that Longwell, if given an opportunity to talk with Attorney Cross that night, would have consented to the blood test because it would have shown he was not intoxicated and had only taken his prescription medication.

Assessing the admission of Longwell's refusal in the context of the other evidence presented, we conclude its admission was harmless beyond a reasonable doubt. Usually, when a defendant does not testify, the jury can reasonably infer a defendant's guilt from the police's testimony. That is not the case here. The jury heard from both Trooper Shirley and Longwell and found Longwell guilty of driving under the influence despite his testimony and explanation for refusing to take the blood test. So, the answer to the question – "is there a reasonable probability that Longwell's refusal to consent to the blood test might have contributed to his conviction?" – is no. Under these circumstances, even if the refusal evidence was erroneously admitted by the trial court, it was harmless beyond a reasonable doubt.

**II.**        **Trooper Shirley's testimony regarding Longwell's impaired driving.**

During trial, Trooper Shirley testified in detail about Longwell's performance in the field sobriety tests. Longwell argues that Trooper Shirley was not properly qualified as an expert witness and should not have been permitted to

-15-

give expert testimony regarding the field sobriety tests. Longwell cites as error the trial court's failure to use its "gatekeeper" function, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to conduct a hearing to determine whether there is a connection between field sobriety test results and the effects of drug use.

We conclude that Longwell's failure to request a *Daubert* hearing relieved the trial court from the responsibility of conducting one. A party against whom scientific or technical evidence is offered has a duty to object to the introduction of such evidence and should request a pretrial hearing to give the trial judge an opportunity to determine whether or not the evidence should be admitted. *Commonwealth v. Petrey*, 945 S.W.2d 417, 419 (Ky. 1997). Moreover, the trial court had no duty to conduct a *Daubert* hearing *sua sponte*, and its failure to do so did not constitute palpable error. *See Tharp v. Commonwealth*, 40 S.W.3d 356, 367-68 (Ky. 2000); *see also Love v. Commonwealth*, 55 S.W.3d 816, 821 (Ky. 2001) (holding that appellant's argument that the trial court should have conducted a *Daubert* hearing with respect to blood serum evidence in a case of wanton murder arising from defendant's driving under the influence of alcohol was not preserved for review).

Furthermore, if Longwell had requested a *Daubert* hearing, the hearing likely would not have succeeded. Trial courts are not required to conduct

*Daubert* hearings if an appellate court in a published opinion has previously determined that a particular type of expert testimony has satisfied the *Daubert* inquiries of reliability and validity. *Johnson v. Commonwealth*, 12 S.W.3d 258, 262 (Ky. 1999). The Kentucky appellate courts have previously acknowledged field sobriety tests as a method of determining whether a motorist is driving while impaired. *See Commonwealth v. Hager*, 702 S.W.2d 431, 431-32 (Ky. 1986).

In accordance with *Commonwealth v. Rhodes*, 949 S.W.2d 621, 623 (Ky. App. 1996), a police officer may testify either as a lay or expert witness. During trial, Trooper Shirley testified that his training and experience as a state trooper for multiple years provided him the ability to detect potential drunk drivers. His opinion that Longwell had been driving while impaired was based upon his training and experience and properly admissible. Therefore, we conclude the trial court did not err by allowing Trooper Shirley to testify regarding Longwell's alleged impairment.

**III.        The DUI jury instruction.**

Longwell concedes that his argument regarding the DUI instruction provided to the jury was not preserved below. Thus, we review this issue for palpable error under RCr[7] 10.26 to ensure that no manifest injustice affecting the substantial rights of a party has resulted from it.

---

[7] Kentucky Rules of Criminal Procedure.

The trial court gave the following DUI instruction to the jury:

> You will find the Defendant guilty of Operating a Motor Vehicle While Under the Influence of Alcohol or Other Substance Which Impairs Driving Ability under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about October 13, 2018, and before the finding of the Indictment herein, he operated a motor vehicle;
>
> AND
>
> B. That while doing so, he was under the influence of alcohol or any other substance or combination of substances which *may* impair one's driving ability.

(Emphasis added.) This instruction was based on the DUI statute in effect before 1991 when the DUI statute was amended. The current DUI statute, under KRS 189A.010, states that a person shall not operate a motor vehicle while under the influence of alcohol or any other substance or combination of substances which impair one's driving ability.

Longwell argues that the given instruction was a palpable error because KRS 189A.010 requires proof of driving impairment and cannot rest on the mere possibility that the substance(s) "may" impair one's driving ability. In *Bridges v. Commonwealth*, 845 S.W.2d 541, 542 (Ky. 1993), the Kentucky Supreme Court held:

> We take as legislative facts that: 1) alcohol (or other substances) *may* impair driving ability; and 2) a driver

-18-

actually *under the influence* of such substances is impaired as a driver, conclusively, and presents a danger to the public. Proof that a driver was "under the influence" *is* proof of impaired driving ability.

(Emphasis in original.) The "other substances" referenced above include Xanax and hydrocodone, the two medications that Longwell admitted being prescribed and taking regularly at the time of the DUI arrest. Both Xanax, which is the brand name for alprazolam, and hydrocodone are listed as controlled substances that should not be present in a person's blood while operating a motor vehicle. *See* KRS 189A.010(1)(d) and KRS 189A.010(12). As stated, Trooper Shirley saw Longwell's prescription bottles in the center console of his truck. Longwell admitted that he told Trooper Shirley he had taken hydrocodone at the time of the stop. As mentioned, Trooper Shirley remembered Longwell's admitting to him that he had taken Xanax four or five hours beforehand. Regardless, the Commonwealth introduced evidence at trial that both Xanax and hydrocodone can impair a driver's driving ability. Therefore, even though the instruction included the word "may," we conclude that no manifest injustice resulted from the trial court's DUI instruction to the jury.

## IV.       Cumulative error.

For his last argument, Longwell claims that the foregoing errors cumulated to deprive him of his constitutional rights. The cumulative error doctrine is appropriate "only where the individual errors were themselves

substantial, bordering, at least, on the prejudicial." *Elery v. Commonwealth*, 368

S.W.3d 78, 100 (Ky. 2012) (quoting *Brown v. Commonwealth*, 313 S.W.3d 577,

631 (Ky. 2010)). If the errors do not individually raise any real question of

prejudice, then the cumulative error doctrine is not implicated. *Id.* Because we

have held that no error occurred, this argument must fail.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Adair Circuit

Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David M. Cross
Albany, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Perry T. Ryan
Assistant Attorney General
Frankfort, Kentucky