RENDERED:  JUNE 14, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1445-ME


COMMONWEALTH OF KENTUCKY                                         APPELLANT


|   | APPEAL FROM GALLATIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE JAMES R. SCHRAND, II, JUDGE |
|   | ACTION NO. 23-CI-00090 |


JAMES LYNCH AND HONORABLE
MARCIA THOMAS, GALLATIN
DISTRICT JUDGE                                                          APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND LAMBERT, JUDGES.

EASTON, JUDGE:  The Commonwealth appeals from the Order of the Gallatin Circuit Court denying the Commonwealth's petition for a writ of prohibition. Appellee and real party in interest, James Lynch ("Lynch"), was charged with operating a motor vehicle while under the influence ("DUI").  The underlying legal question presented by the Commonwealth's petition is whether the Gallatin

District Court erred by granting Lynch's motion in limine excluding the Commonwealth's introduction of the results of a Horizontal Gaze Nystagmus ("HGN")[1] test. The district court ruled such evidence may not be offered through the testimony of the arresting officer unless the Commonwealth also calls an expert to establish the scientific reliability of the HGN testing. Upon our review, we reverse and remand to the circuit court with direction to issue a writ of prohibition.

## FACTUAL AND PROCEDURAL HISTORY

Just after 1:00 a.m. on the morning of April 9, 2022, Trooper Mason Wilson of the Kentucky State Police ("Trooper Wilson") initiated a traffic stop after seeing Lynch run a stop sign and cross over the white line of the roadway into the emergency lane. Trooper Wilson would later describe Lynch as "abnormally fidgety" and speaking rapidly. Trooper Wilson proceeded with a typical DUI investigation.

Lynch failed a series of standardized field sobriety tests ("SFSTs" or "FSTs"), including the HGN test. Lynch was subsequently arrested and charged with disregarding a stop sign; careless driving; failure to produce an insurance card; failure to maintain insurance, first offense; and DUI, first offense.

---

[1] "Nystagmus is an involuntary rapid movement of the eyeball, which may be horizontal, vertical, or rotatory. An inability of the eyes to maintain visual fixation as they are turned from side to side (in other words, jerking or bouncing) is known as horizontal gaze nystagmus, or HGN." *Leatherman v. Commonwealth*, 357 S.W.3d 518, 527 n.4 (Ky. App. 2011) (citations omitted).

After having a consent form read to him, Lynch submitted to a blood test at a hospital. Lynch later moved to suppress the results of this blood test, arguing he was coerced to submit. The district court granted Lynch's motion to suppress the blood test results because of the then recent change in the law explained in *Commonwealth v. McCarthy*, 628 S.W.3d 18 (Ky. 2021). The Commonwealth did not question the suppression of the blood test results in the writ proceeding.

Lynch then filed a motion *in limine*, apparently under KRE[2] 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), arguing that the evidence of the HGN test should be excluded because expert testimony on the scientific reliability of HGN observations was required and the officer who administered the test was not qualified to testify as such an expert. The Commonwealth argued that officers could give testimony about SFSTs, including the HGN test, pursuant to *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241 (Ky. 2019).

We are told in the briefs that the district judge orally sustained Lynch's motion to exclude the HGN testing evidence during a teleconference with the parties on July 11, 2023. This teleconference is not part of the record. Fortunately, the Commonwealth asked the district court to memorialize its oral

---

[2] Kentucky Rules of Evidence.

-3-

ruling, and the district court issued written Findings of Fact and Order on July 12, 2023. The district court sustained Lynch's motion *in limine* excluding the HGN evidence. In doing so the district court listed the following:

1. That the Commonwealth would produce evidence from the testimony of the arresting officer pertaining to certain field sobriety tests performed by the Defendant.

2. That the Commonwealth would produce evidence of the horizontal gaze nystagmus (HGN) test through only the observation and testimony of the arresting officer.

3. That the Commonwealth['s] witness, the arresting officer, is not a qualified expert witness.

4. That the Commonwealth has indicated that they will not produce any expert testimony in the case.

5. That the HGN is a scientific test that will take into account many factors in both the way it is administered by the officer and the individual Defendant's ability to perform, that only a qualified expert can testify [to] and explain to [the] jury.

6. That the HGN falls under the requirements set forth in KRE 702 and must be subject to a Daubert hearing.

7. That the Commonwealth has not requested a Daubert hearing[3] and has indicated there will be no expert testimony at trial.

_____

[3] It is not the responsibility of the proponent of evidence to challenge its own evidence by requesting a *Daubert* hearing. *Commonwealth v. Petrey*, 945 S.W.2d 417, 419 (Ky. 1997).

-4-

Citing additional case law, the Commonwealth filed a motion for the district court to reconsider its ruling. The district court conducted a hearing on the motion to reconsider on July 18, 2023. At that hearing, Lynch argued the cases cited by the Commonwealth related to SFST testimony only generally and did not specifically address the HGN test. In response, the Commonwealth asserted that the National Highway Traffic Safety Administration ("NHTSA") defines and includes the HGN test as an SFST.

The district court believed the HGN test was just "one of the tools, in my opinion, on the officer's tool belt when he can determine whether or not there is probable cause for them to further investigate. Just because they [NHTSA] say it's part of their FSTs doesn't mean that it's admissible . . . ." The district court stated that in Gallatin County and other nearby counties additional expert testimony has always been required for the admission of HGN results at trial. As the legal basis for this Opinion, the district court relied upon a ten-year-old ruling of the Carroll District Court. The district court denied the motion to reconsider.

The Commonwealth then filed its petition for a writ of prohibition with the Gallatin Circuit Court. The Commonwealth's argument was that the district court acted erroneously, but within its jurisdiction, when that court ruled the HGN test was inadmissible without additional expert testimony. The Commonwealth asserted it was irreparably harmed in the prosecution of its case by

the exclusion of the HGN evidence, especially because it did not have the results of a blood test.

The district court judge, Honorable Marcia Thomas, filed her personal response to the petition. Judge Thomas stated, "The Commonwealth cannot claim irreparable injury when evidence is suppressed merely because they now have the duty to reevaluate the case and determine how to move forward with less evidence than first expected." Judge Thomas further insisted that, when HGN evidence is to be used at trial, the proper scientific reliability foundation through expert testimony is required pursuant to KRE 702. She saw this as part of her job as the "gatekeeper" under *Daubert*.

Lynch, as the real party in interest, also filed a response to the petition. Lynch conceded there was no adequate remedy by appeal but that the burden of proving "great injustice or irreparable injury" had not been met. Lynch also moved to dismiss the petition for not citing legal authority, a requirement for writ petitions. The Commonwealth moved for leave to file an amended petition to cure any omission, which the circuit court granted.

On November 21, 2023, the circuit court issued its Order denying the Commonwealth's petition. The circuit court held that the district court correctly applied the law to exclude the HGN evidence. The circuit court stated Kentucky's appellate courts have never addressed in a published opinion the admissibility of

HGN test results without the need for further expert testimony. The circuit court also concluded that the Commonwealth did not meet its burden of proving that a great injustice or irreparable injury would result if the petition for a writ were not granted. This appeal followed.

## STANDARD OF REVIEW

"A writ of prohibition is an extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Spears v. Goodwine*, 490 S.W.3d 347, 350-51 (Ky. 2016) (internal quotation marks and citations omitted). In *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), the Kentucky Supreme Court held:

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Id.* at 10 (emphasis in original). The Commonwealth correctly bases its petition for a writ of prohibition as being within the second class of writs.

A court's decision to deny a writ is reviewed for abuse of discretion. *Goble v. Mattox*, 636 S.W.3d 537, 541 (Ky. 2021). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair,

**or** unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (emphasis added).  Misapplication of the law alone may result in an abuse of discretion.  "[W]hen the issue presented involves a question of law, we review the question of law *de novo.*" *Commonwealth Fin. & Admin. Cabinet v. Wingate*, 460 S.W.3d 843, 847 (Ky. 2015) (internal quotation marks and citations omitted).

## ARGUMENT

We must decide two legal questions.  Did the exclusion of the HGN evidence cause great injustice or irreparable injury to the Commonwealth?  If so, did the district court erroneously apply the law on HGN admissibility?  We conclude the answer to both questions is in the affirmative.  We should address first the question of great injustice or irreparable injury.[4]

---

[4] We note in passing the argument that the Commonwealth did not preserve any error with respect to a precise injury claimed.  Having reviewed the file, we find that the Commonwealth sufficiently articulated its argument with the circuit court and makes the same argument to this Court:  The injury and injustice claimed is based on the loss of the HGN evidence in the particular circumstances of this case.

Lynch also complained about the production of the district court record.  For completeness of the record in this case involving a petition for a writ against a district court, we ordered the production of the entire record, including the district court file for our consideration.  The parties do not challenge the authenticity or accuracy of the district court record submitted.

**THE COMMONWEALTH HAS SHOWN GREAT INJUSTICE
OR IRREPARABLE INJURY FOR WRIT CONSIDERATION**

Seeking a writ from the circuit court is the proper procedure to challenge pre-trial suppression or other exclusion of evidence in the district courts. *Commonwealth v. Williams*, 995 S.W.2d 400, 404 (Ky. App. 1999). When issuing a writ or when reviewing a writ decision, we should first decide the threshold questions of whether an adequate remedy exists by appeal and whether "great injustice or irreparable injury" has been shown before deciding if a legal error has occurred. *See Commonwealth v. Wheeler*, 558 S.W.3d 475, 479 (Ky. App. 2018).

The parties agree that no adequate remedy exists for the Commonwealth by appeal. Double jeopardy would prevent a retrial if Lynch were to be acquitted due to a lack of sufficient evidence. With this not disputed, the focus turns to whether the Commonwealth "would suffer great and irreparable injury" if the writ is not granted. *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961). We chose this venerable case because it has more to say about this second requirement. A writ is also proper if it will prevent a substantial miscarriage of justice and correct an error which is "appropriate in the interest of orderly judicial administration." *Id*. at 801.

The age of *Bender* (decided by our former Court of Appeals, then the only and highest appellate court in Kentucky) requires us to clarify that the role of issuing writs generally for the purpose of orderly administration of justice is within

-9-

the purview of the Kentucky Supreme Court under Section 110 of our present Constitution. Still, the availability of this basis for writs should be recognized as we examine the great injustice or irreparable injury standard which the circuit court and this Court must apply.

On the undisputed facts (identification of the evidence the Commonwealth has left to present), the question of great injustice or irreparable injury is a question of law for us to decide *de novo*. While we have often repeated the comment that this standard contemplates something of a "ruinous" nature, we have also held that depriving the Commonwealth of "vital" or "crucial" evidence satisfies the standard. *Commonwealth v. Bell*, 365 S.W.3d 216, 223 (Ky. App. 2012).

In some cases, irreparable harm will be obvious, such as when the Commonwealth loses all its evidence due to suppression. *Wheeler*, *supra* (all evidence suppressed due to improper traffic safety check); *Commonwealth v. Crosby*, 518 S.W.3d 153 (Ky. App. 2017) (all evidence suppressed after arrest without probable cause). In *Bell*, *supra*, the evidence suppressed was a confession by the defendant. Admittedly, the present case does not present the same level of harm as seen in these other cases.

Lynch insists that the Commonwealth cannot show the threshold level of harm citing *Ortiz v. Commonwealth*, 630 S.W.3d 714 (Ky. 2021). *Ortiz* actually

illustrates by contrast how the present case does present a case of great injustice or irreparable harm.

In *Ortiz*, due to suppression, the Commonwealth lost the evidence of a blood test measuring alcohol concentration. The court in *Ortiz* held this alone was not enough to pass the threshold for a writ in that case. That court pointed out that blood alcohol level was just one way to prove a DUI case. The court then noted the officer's observations, including all SFSTs, were still available. *Id*. at 717. In addition, the arresting officer in Ortiz smelled alcohol on Ortiz and in the vehicle. *Id*.

In the present case, the arresting officer's citation makes no mention of the smell of alcohol on Lynch or in his vehicle. We do not know if alcohol was the substance allegedly causing any impairment. Here, the HGN observations have been excluded in addition to the loss of the blood test evidence. The HGN test was the only one Lynch failed completely, showing six out of six clues. Lynch's deficient performance on the other two SFSTs was more uncertain with five of eight clues on the walk and turn and three of four clues on the one-leg stand. As we will explain later, the HGN test has been proven to be the most accurate of the three standard tests. In the circumstances, the Commonwealth has shown a sufficient great injustice or irreparable injury to pass the threshold for consideration of the writ.

-11-

## EXCLUSION OF HGN EVIDENCE UNLESS ADDITIONAL EXPERT EVIDENCE WAS OFFERED WAS ERRONEOUS

We then turn to the question of the claimed legal error. We start with a review of KRE 701 and KRE 702 governing the admission of lay and expert witness testimony. KRE 701 outlines the admissibility of opinion testimony by lay witnesses. If a witness is not testifying as an expert, the witness may provide opinion testimony "limited to those opinions or inferences which are: (a) Rationally based on the perception of the witness; (b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The admissibility of expert testimony is governed by KRE 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

The testimony of police officers may be composed of both lay opinion and expert opinion. We have so held in the context of DUI cases. *Commonwealth v. Rhodes*, 949 S.W.2d 621, 623 (Ky. App. 1996). We will return to *Rhodes* as a seminal case about HGN evidence shortly. But first we will illustrate how a police officer's testimony may contain both lay and expert opinion.

There are circumstances where a lay witness may state an opinion on intoxication based on common experiences and observations. The prevalence of alcohol in our culture means that any ordinary person has probably observed an intoxicated person. Anyone, including police officers, may smell alcohol on someone's breath, see blurry or bloodshot eyes, watch the person stumble, hear slurred or other abnormal speech, or observe other commonly seen reactions to alcohol and then testify under KRE 701 that the person was intoxicated. *Carson v. Commonwealth*, 621 S.W.3d 443, 446-47 (Ky. 2021).

We agree that the line between lay opinion and expert opinion is crossed when it comes to HGN evidence. This measurable reaction is not a commonly understood observation. It requires "knowledge, skill, experience, training, or education" per KRE 702 for an officer administering HGN testing to testify about how to give the test, how a person "fails" such a test, and what this means *generally* in terms of intoxication.

Such expert testimony by a police officer presents a different question from the scientific reliability of HGN observations and thus whether further expert opinion is required under KRE 702(2). We must determine whether the scientific reliability of HGN evidence is still an open question requiring expert testimony in addition to that of the officer.

To guide our discussion, we believe it is important to discuss an important rule about application of the precedents of our appellate courts. "On all questions of law the circuit and district courts are bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court and, when there are no such precedents, those established in the opinions of the Court of Appeals." SCR[5] 1.040(5).

We know of no authority for courts to consider the opinions of other circuit or district courts. While the pervasiveness of discretion in our justice system results in different practices around our state, the orderly administration of justice cannot permit enclaves of local law when it comes to substantive law of general application. When we use the expression "in this jurisdiction," we must mean the Commonwealth as a whole when substantive issues are involved.

Consistent with SCR 1.040(5) we will start with authority from the Kentucky Supreme Court. "Kentucky law is clear that evidence of FSTs is

---

[5] Rules of the Kentucky Supreme Court.

-14-

admissible and that officers observing a defendant's driving and physical condition may offer opinion testimony that the defendant was intoxicated." *Iraola-Lovaco*, *supra*, at 245. Both the district court and circuit court insisted that, since *Iraola-Lovaco* only mentions SFSTs in general and does not specify the HGN test, it does not allow for admission of HGN testing without scientific reliability testimony. This reading overlooks the discussion in the case.

The court in *Iraola-Lovaco* quoted at length from a federal case which summarized Kentucky law. The quote includes this statement: "There is no requirement to prove that field sobriety testing is scientifically reliable." *Id.* at 245. Cited to support this statement was the unpublished opinion of this Court in *Bridgers v. Commonwealth*.[6] This Court in *Bridgers* specifically refers to an HGN test having been performed and did not exclude it with the observation that scientific reliability expert evidence is not needed.

We have recently referred to the source of the HGN and other SFSTs. NHTSA developed these tests with years of continuing research. While there are a number of tests, three are commonly listed at the standards: "the walk and turn, the one-leg stand, and the horizontal gaze nystagmus tests." *Workman v. Commonwealth*, 687 S.W.3d 168, 169 n.1 (Ky. App. 2024). If we return to the

---

[6] No. 2005-CA-1690-DG, 2007 WL 121846 (Ky. App. Jan. 19, 2007). Reliance on this unpublished case is not required. We will discuss in detail the published authorities applied in *Bridgers*.

NHTSA resource about SFSTs, we find documented studies of HGN, including repeated studies which show it to be the most reliable indication of intoxication among the SFSTs when compared to the walk and turn and one-leg stand.[7] This reliability shows the HGN test is not a novel or untested piece of technology or potential "junk" science to be further analyzed under *Daubert*.

We note the attempt to suggest some other conclusion from the *Iraola-Lovaco* case because of its citation to *Kansas v. Shadden*, 235 P.3d 436 (Kan. 2010). But the reference by our Supreme Court to *Shadden* was solely about nomenclature or wording which may be used to describe the process, such as calling it a "test" and saying that someone "passed or failed" the test. The Kansas Supreme Court did not rule that SFST evidence was inadmissible. Rather that court drew the line by saying that an officer could not give an opinion on a specific level of intoxication without other reliable evidence to establish the level. We do not suggest, and we know of no authority which would permit an officer in Kentucky to testify to a specific level such as .08 or .10 based on HGN testing

---

[7] Session 8 of the NHTSA training materials includes results of earlier testing showing that HGN led to correct assessment of intoxication 77% of the time as compared to 68% for walk and turn and 65% for one-leg stand. With years of experience after the initial studies, a later study showed HGN at 88% as compared to walk and turn at 79% and one-leg stand at 83%. DWI Detection and Standardized Field Sobriety Test (SFST) Resources, NHTSA, https://www.nhtsa.gov/dwi-detection-and-standardized-field-sobriety-test-sfst-resources (follow 2023 PowerPoint Presentations: DWI Detection and SFST Training – Sessions 7-16; then follow zip file for Session 8).

results. To that extent, we agree with the ruling of the Kansas Supreme Court in *Shadden*.

If we disregard the clear indication from *Iraola-Lovaco*, we must then analyze *Commonwealth v. Rhodes*, 949 S.W.2d 621 (Ky. App. 1996), cited in *Iraola-Lovaco*. In *Rhodes*, a driver was stopped by a state trooper on the suspicion of drunk driving. The state trooper administered three field sobriety tests, including an HGN test, and a preliminary breath test. The driver failed all tests and was subsequently arrested.

The motorist was convicted in district court of DUI and reckless driving. On direct appeal, the circuit court reversed the convictions. *Id.* at 622. One of the reasons for the circuit court's reversal was the Commonwealth's introduction of the motorist's HGN test results. The circuit court found the HGN test results were inadmissible, stating that the HGN test "encompasses attributes of a test scientific in nature." *Id.* at 623. The circuit court further held that a proper foundation should have been laid upon which the trial court could then make a finding regarding the scientific validity of the test. *Id.*

This Court granted the Commonwealth's motion for discretionary review. We affirmed in part, reversed in part, and remanded the case back to district court. This Court had "no problem" with the introduction of the HGN evidence. *Id.* The Court looked to other jurisdictions and noted other states have

held the HGN test to be based on inarguable scientific principles, but such states "require at least some foundational testimony that the officer was trained and certified, that the test was properly administered, and that the proper procedures were employed." *Id.* at 623-24 (citing *Louisiana v. Armstrong*, 561 So.2d 883 (La. App. 2 Cir. 1990)).

The Court in *Rhodes* reviewed the video record and could find no evidence that the arresting trooper had received any training or certification in HGN testing. *Id.* at 624. However, no specific objection was made regarding the trooper's qualifications – defense counsel objected on grounds of hearsay when the trooper opined that the jerkiness of the eye tracking indicated the presence of alcohol "most of the time." The district court overruled the defense's objection, stating that the matter was "in the officer's training." Therefore, this Court concluded it could not say that the district court erroneously admitted the HGN testimony. *Id.*

Basically, Lynch's argument to distinguish *Rhodes* rests on the level of review. Because of a lack of preservation of any error, we reviewed only for palpable error in *Rhodes*. This does not lessen the impact of the ruling in *Rhodes*. No error was found, much less a palpable one.

In the thirty years since *Rhodes*, legal commentators have weighed in on its holding. "[A]s held by *Commonwealth v. Rhodes*, Kentucky follows the

view that the HGN is a reliable scientific test and the results are admissible where a proper foundation is laid." *Trial Handbook for Ky. Law* § 32:11 (2024 ed.) (footnote omitted). When listing tests approved by the appellate courts of Kentucky and thus having no need for further *Daubert* evaluation, *Rhodes* is specifically listed with respect to HGN tests. David N. Finley, Erin Carlson, Bethany R. Scheffler, 20 *Ky. Prac. Ky. Motions in Limine* § 5:49 (2023-2024 ed.). The reliable science behind HGN generally has passed the *Daubert* "gate" as a matter of law in Kentucky.

We further commented on this issue in *Kidd v. Commonwealth*, 146 S.W.3d 400 (Ky. App. 2004). The DUI driver convicted in that case was administered the HGN with other tests. He claimed a *Daubert* hearing should have been conducted. The Barren Circuit Court affirmed the conviction stating that field sobriety tests "have been admissible evidence in Courts of this Commonwealth for decades in DUI cases." *Id*. at 402. We affirmed noting that Kidd had failed to preserve any objection about the admitted tests.

Lynch suggests that many states still require scientific reliability evidence for HGN test admissibility. Because we base our decision on Kentucky law, we need not belabor this Opinion with competing string citations. Suffice it to say, that the majority rule on the question seems to have shifted to accept the HGN testing process without *Daubert* hearings. This may reflect the continuing use of

-19-

the test across the country for many decades now.  For a collection of cases on this topic we refer to *Horizontal Gaze Nystagmus Test:  Use in Impaired Driving Prosecution*, 60 A.L.R. 4th 1129 (originally published in 1988 with supplementation) (Section 5 specifically collects those cases about "foundation for admissibility of HGN test results").  *See also Evidence Arising from Field Sobriety Tests – Horizontal Gaze Nystagmus Tests*, 61A C.J.S. *Motor Vehicles* § 1612 (2024).

We have chosen for comment one case from a neighboring jurisdiction because of its exhaustive analysis of HGN testing and how it may be properly admitted through a police officer.  *Missouri v. Rose*, 86 S.W.3d 90 (Mo. Ct. App. 2002).  In *Rose*, the court recognized that scientific reliability evidence is no longer needed for HGN testing.  *Id*. at 97.  The officer may offer testimony about the testing if properly trained to do the test and if the test was properly performed.  The resulting evidence is circumstantial evidence of intoxication. When the driver scores a six out of six on the HGN test, this is a clear indication of intoxication.  *Id*. at 98.  If the officer tries to say that the HGN results establish a specific level of intoxication, that exceeds the officer's expertise.  *Id*. at 100.  *See also Shadden*, *supra*.  We believe this is the proper way to introduce HGN test results and to limit their use in accordance with *Rhodes*.

Even though admissible, the HGN evidence is not unassailable. The officer can be subjected to cross-examination about his training which includes the potential for other causes for the test results and how the officer may have failed to consider these. Any defendant may offer evidence of his or her specific medical or other explanations for the HGN results. But the potential for these explanations does not somehow translate to a lack of scientific basis for admission of the HGN test results by the Commonwealth through the officer who properly performed the test.

## CONCLUSION

In summary, the Commonwealth has made the threshold showing of great injustice or irreparable injury caused by the loss of the HGN evidence when considered with its remaining evidence. Having also determined that the Gallatin district and circuit courts erred in their legal conclusion of the need for expert testimony in addition to that of a police officer to admit HGN results, we reverse the Gallatin Circuit Court with direction that it issue the requested writ of prohibition to the Gallatin District Court.

ALL CONCUR.

-21-

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Timothy A. Arnold
Frankfort, Kentucky